863 F.2d 1522
 UNITED STATES of America, Plaintiff-Appellee,
v.
Concepcion MENA, Alfredo Brack-Brack, Nurberto
Diaz-Zabaleta, Esteban Angulo Perez, Regulo Cuesta
Cogollo, Manuel Medina-Tellez, Wilfredo
Aurela-Zuniga, Humberto
Tellez-Molina,
Defendants-
Appellants.
 No. 87-5333.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 23, 1989.
 
 Kathy Hamilton, Coconut Grove, Fla., for Mena.
 Richard C. Klugh, Jr., Asst. Federal Public Defender, Miami, Fla., for Brack-Brack.
 Michael Catalano, Miami, Fla., for Diaz-Zabaleta, Tellez-Molina.
 Blas E. Padrino, Miami, Fla., for Perez.
 Jose R.E. Batista, Diaz & Batista, P.A., Hialeah, Fla., for Cogollo.
 Calianne P. Lantz, Miami, Fla., (court-appointed), for Zuniga.
 Sonia Escobio O'Donnell, Linda Collins Hertz, Asst. U.S. Attys., for U.S.
 Appeal from the United States District Court for the Southern District of Florida.
 Before KRAVITCH and EDMONDSON, Circuit Judges, and HOFFMAN*, Senior District Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 Unanswered questions under the Maritime Drug Law Enforcement Act continue to arise. These eight defendants[1] appeal the convictions and sentences they received for possessing with the intent to distribute more than one thousand kilograms of marijuana, and for conspiring to do the same, in violation of 21 U.S.C. Secs. 955a & 955c, as amended by Pub.L. No. 99-570, hereinafter referred to as (and now codified at) 46 U.S.C.App. Sec. 1903. We affirm the convictions and the sentences.
 
 I.
 
 2
 On November 21, 1986, the United States Coast Guard cutter Cape Upright arrested the Honduran vessel Don Yeyo as it sailed in international waters east of the Bahamas. The Coast Guard had observed the sixty or seventy-foot ship riding low in the water and had signalled for it to stop. The vessel appeared to change course when approached and did not heed the Coast Guard's initial request; the Coast Guard therefore enlisted the aid of a nearby United States Navy ship to induce the Don Yeyo to stop. As they drew near the vessel, Coast Guard crewmen began to smell marijuana.
 
 
 3
 With the permission of the master, defendant Brack-Brack, the Coast Guard boarded the vessel. The boarding party searched the Don Yeyo and found in the cargo holds thirty-five thousand pounds of baled marijuana. The officers then arrested all eight persons aboard the Don Yeyo, who were unarmed; but the officers did not inform the sailors of their Miranda rights. After contacting the Honduran government and receiving permission to enforce United States law aboard the Don Yeyo, the Coast Guard officers escorted the eight defendants to Miami. There, after receiving Miranda warnings, the defendants gave statements to federal drug-enforcement agents.
 
 
 4
 At a joint trial, a Coast Guard officer identified the defendants as the persons he observed aboard the Don Yeyo. Only two of the defendants testified before the jury. Defendant Aurela-Zuniga stated that he was hired in Colombia as a crewman aboard a vessel sailing for Bermuda. According to his testimony, he was transported to the vessel, some sixty miles offshore, where he boarded without looking into the cargo hold. He smelled nothing unusual at that time, nor did he look into the hold during the voyage. Defendant Brack-Brack testified that he had been asked to master an empty vessel from Colombia to Bermuda; although he later discovered that the vessel contained marijuana, he was forced at gunpoint and by threats to his family to pursue the scheme. Aurela-Zuniga also testified that Brack-Brack was threatened with a gun.
 
 II.
 
 5
 The defendants assign several points of error.[2] First, they insist that the trial court erroneously denied a motion to dismiss their indictment. Second, defendants submit that a suppression motion was denied improperly. Third, Brack-Brack argues that the trial court erred in denying his request that a drug-enforcement agent produce notes of his confession. Fourth, defendants allege that the evidence adduced was insufficient to prove their guilt beyond a reasonable doubt. Fifth, defendants argue that jurisdiction over the vessel is an element of the crime with which they were charged, and assert that the jury had before it no admissible evidence tending to show that the United States had such jurisdiction. Sixth, several of the defendants object that counsel for Brack-Brack, during closing argument, referred to the fact that some defendants chose not to testify, and further claim that Brack-Brack's lawyer suggested to the jury that the other defendants had criminal records. Seventh, defendants argue that the jury was not given correct instructions. Finally, defendants complain that they were improperly sentenced.
 
 A. The motion to dismiss
 
 6
 The defendants were indicted on December 3, 1986, for a crime committed on November 21, 1986. The indictment charged them with violations of 21 U.S.C. Secs. 955a & 955c, as amended by Pub.L. 99-570 on October 27, 1986. They argue that 21 U.S.C. Secs. 955a & 955c did not exist as of the date of the indictment, claiming that these sections were repealed by Pub.L. 99-570. This argument is without merit. Public Law 99-570 revised 21 U.S.C. Secs. 955a & 955c, but did not repeal those sections. Those sections were originally part of Pub.L. 96-350. Section 3202 of Pub.L. 99-570 provides that "... Public Law 96-350 ... is amended by striking all after the enacting clause and inserting in lieu thereof the following ..." (emphasis supplied). 100 Stat. 3207-95 (1986). Sections 955a and 955c, after amendment by Pub.L. 99-570, are now codified at 46 U.S.C.App. Sec. 1903.
 
 
 7
 The defendants argue that 46 U.S.C.App. Sec. 1903 is unconstitutional on its face because it proscribes conduct that has no "meaningful relationship" to the United States. Although several cases in our circuit and other circuits uphold the constitutional validity of the enactment under which the defendants were convicted, we need not rehearse their reasoning now, for the defendants have simply failed even to suggest "that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). Such is the defendant's burden in a case challenging the facial validity of a congressional enactment on other than first-amendment grounds; that 46 U.S.C.App. Sec. 1903 "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." Id.
 
 
 8
 The defendants also suggest that section 1903 is void for vagueness because it fails to give defendants fair notice of what activity is prohibited; specifically, the defendants argue that the phrase "vessel subject to the jurisdiction of the United States" is an "inadequately define[d] esoteric and technical term[ ]." The due-process clause of the fifth amendment requires that a statute be declared void if it is so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Statutory language must convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." Jordan v. De George, 341 U.S. 223, 231-32, 71 S.Ct. 703, 708, 95 L.Ed. 886 (1951). We considered and rejected an argument asserting the vagueness of the predecessor of section 1903, 21 U.S.C. Sec. 955a, in United States v. Gonzalez, 776 F.2d 931 (11th Cir.1985). Finding our conclusions in Gonzalez equally applicable to 46 U.S.C.App. Sec. 1903, we reaffirm them:
 
 
 9
 There is nothing vague about the statute. Congress has provided clear notice of what conduct is forbidden: any possession of marijuana on the high seas with intent to distribute. The United States will enforce this law to the full extent of its ability under international law.... Those embarking on voyages with holds laden with illicit narcotics, conduct which is contrary to laws of all reasonably developed legal systems, do so with the awareness of the risk that their government may consent to enforcement of the United States' laws against the vessel.
 
 
 10
 776 F.2d at 940-41. Similarly, we find nothing unduly vague in the phrase "vessel subject to the jurisdiction of the United States." Congress provided a rather detailed, though non-exhaustive, definition of this term in 46 U.S.C.App. Sec. 1903(c)(1). The fact that the defendants in their brief suggest a few potential interpretational difficulties[3] hardly justifies a conclusion that the language is unconstitutionally vague.[4]
 
 
 11
 Finally, as we concluded in Gonzalez, the statute does not operate ex post facto. To be sure, defendants were subject to arrest only after Honduras gave its consent to the enforcement of United States law. The conduct prohibited by the statute, however, was clearly defined before the defendants embarked on their voyage. Defendants accepted the risk that Honduras would consent. 776 F.2d at 938-41.
 
 B. The motion to suppress
 
 12
 Defendants assert that no witness ever testified to the reasonableness of the Coast Guard's suspicion that the Don Yeyo was being used to smuggle contraband into the United States. Therefore, defendants argue, the marijuana should have been suppressed as the fruit of an illegal search. Alternatively, defendants claim they were entitled to a suppression hearing.
 
 
 13
 Record testimony reveals that the vessel sailed within striking distance of the Florida coast, was riding very low in the water, seemed to change course when approached, did not stop when requested, and smelled of marijuana prior to the Coast Guard's boarding. These factors, viewed together, were sufficient to induce a reasonable suspicion of violation of United States law. United States v. Pearson, 791 F.2d 867, 870 (11th Cir.), cert. denied, 479 U.S. 991, 107 S.Ct. 590, 93 L.Ed.2d 591 (1986); United States v. Reeh, 780 F.2d 1541, 1547 (11th Cir.1986); United States v. Williams, 617 F.2d 1063, 1076 (5th Cir.1980) (in banc).[5] The government need not have argued to the jury the question of "reasonable suspicion" vel non, and, with enough justification for an officer's "reasonable suspicion" apparent on the face of the record, we cannot say that the district judge abused his discretion by not ordering a suppression hearing.
 
 
 14
 Brack-Brack claims that he was not given a Miranda warning upon the Coast Guard's boarding, and that as a result, he showed the boarding party where the marijuana was located and gave incriminating statements that were subsequently used against him. The government argues that these statements were unresponsive to the questions asked of Brack-Brack, volunteered, and thus not subject to Miranda. See Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966) ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."); United States v. Castro, 723 F.2d 1527, 1530 (11th Cir.1984). The trial court refused to order an evidentiary hearing on whether Brack-Brack's initial statements should have been suppressed.
 
 
 15
 Assuming the district judge should have held a suppression hearing to determine whether Brack-Brack's statements were voluntary, we find any error harmless. The Coast Guard had the right to conduct a safety sweep upon boarding the Don Yeyo (Pearson, 791 F.2d at 870); as the marijuana was plainly visible in the holds, the Coast Guard would have found it regardless of any statements made by Brack-Brack. Furthermore, the government only presented one pre-Miranda statement to the jury; the statement revealed that Brack-Brack thought the Coast Guard cutter had come to refuel or off-load the Don Yeyo. This statement was not inconsistent with Brack-Brack's defense of compulsion. With the overwhelming evidence of drugrunning activity that both the government and Brack-Brack himself presented to the jury, this cumulative testimony could hardly have affected the verdict.
 
 C. The motion to compel production
 
 16
 Drug-enforcement agents took abbreviated notes while interviewing defendant Brack-Brack upon his arrival in Miami. At the conclusion of the interview, the agents read the contents of the notes to Brack-Brack in order to insure their accuracy. The agents used these notes to prepare their final typed interview report, which was put at Brack-Brack's disposal. Counsel sought production of the rough notes, under the Jencks Act, 18 U.S.C. Sec. 3500, in order to impeach a testifying agent.
 
 
 17
 After reviewing the rough notes in camera, the district court refused to order their production. We also have reviewed the notes in camera; they consist merely of a few sentence fragments. The Jencks Act does not give Brack-Brack the right to view these rough notes. United States v. Soto, 711 F.2d 1558, 1562 (11th Cir.1983).
 
 
 18
 Nor did the government violate the standing discovery order. The order required the government to permit defendants to inspect "[t]he substance of any oral statement made by the defendant before or after his arrest in response to interrogation by a then known-to-be government agent which the government intends to offer in evidence at trial." The substance of Brack-Brack's statements was made available to him through disclosure of the final report.
 
 D. Sufficiency of the evidence
 
 19
 Defendants argue that the evidence admitted at trial was insufficient as a matter of law for the jury to conclude that they had each conspired to possess and distribute and had possessed with intent to distribute thirty-five thousand pounds of marijuana. We review the evidence admitted at trial " 'in the light most favorable to the government, accepting all reasonable inferences that support the verdict,' ... mindful that the evidence need not 'exclude every reasonable hypothesis of innocence [nor] be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.' " United States v. Migueles, 856 F.2d 117, 118 (11th Cir.1988) (quoting United States v. Curra-Barona, 706 F.2d 1089, 1091 (11th Cir.1983), cert. denied, 465 U.S. 1031, 104 S.Ct. 1296, 79 L.Ed.2d 696 (1984) and United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (in banc),[6] aff'd on other grounds, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)).
 
 
 20
 Each defendant was identified in the courtroom as one of eight persons far a-sea on board a small vessel rank with the fumes of over seventeen tons of raw marijuana. The jury was entitled to infer from this evidence that each defendant knowingly possessed the marijuana, and, as the enormous cache "was too much ... for even the most voracious of personal habits," the jury could also infer that defendants intended to distribute their cargo. United States v. Blasco, 702 F.2d 1315, 1331 (11th Cir.), cert. denied, 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983). See also Migueles, 856 F.2d at 119-20.
 
 
 21
 Defendants further argue that the jury did not specifically find that any defendant knowingly possessed or conspired to possess over one thousand kilograms of marijuana, and submit that all defendants must either be acquitted or convicted merely of simple possession. The jury charge, however, required the government to prove beyond a reasonable doubt "that the defendants knowingly and willfully possessed at least 1,000 kilograms of marijuana with the intent to distribute it." Defendants' contentions thus lack bite.
 
 
 22
 Moreover, the precise quantity of marijuana is not an element of the substantive offense defined in 46 U.S.C.App. Sec. 1903(a). To justify an enhanced sentence under 21 U.S.C. Sec. 960(b)(1)(G), the government need not prove that the defendants knowingly possessed one thousand kilograms or more of marijuana. Rather, the government need only demonstrate that the amount of marijuana knowingly possessed equaled or exceeded one thousand kilograms. See United States v. Simmons, 725 F.2d 641, 644 (11th Cir.) (reaching identical result under 21 U.S.C. Sec. 841(b)(6)), cert. denied, 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984).
 
 
 23
 E. United States jurisdiction over the vessel
 
 
 24
 At trial, the government offered a document tending to prove that Honduras had granted "consent or waiver of objection ... to the enforcement of United States law" (46 U.S.C.App. Sec. 1903(c)) in order to show that the vessel Don Yeyo was "subject to the jurisdiction of the United States." 46 U.S.C.App. Sec. 1903(a).[7] The document, written on official stationery, is signed and sealed by the Commander General of the Honduran Navy. It is certified by the United States embassy in Honduras. On its face, the document identifies the Don Yeyo as an Honduran vessel and accords Honduran consent to the United States' exercise of jurisdiction over the Don Yeyo. The defendants have challenged both the document and the circumstances under which it was admitted, arguing that the jury had before it no competent evidence to find United States jurisdiction.
 
 
 25
 1. Standing.--The government asserted at oral argument that 46 U.S.C.App. Sec. 1903(d) deprives defendants of standing to object to the United States' exercise of jurisdiction over the Don Yeyo. Section 1903(d) provides as follows:
 
 
 26
 A claim of failure to comply with international law in the enforcement of this chapter may be invoked solely by a foreign nation, and a failure to comply with international law shall not divest a court of jurisdiction or otherwise constitute a defense to any proceeding under this chapter.
 
 
 27
 46 U.S.C.A.App. Sec. 1903(d). The defendants, however, do not complain of a violation of international law. They assert that no competent evidence showed compliance with the domestic-law requirement found in 46 U.S.C.App. Sec. 1903(a) that their vessel be "subject to the jurisdiction of the United States."
 
 
 28
 Certain language in the legislative history of section 1903(d) indicates that Congress intended to prevent defendants from raising any objection regarding United States jurisdiction over a vessel. For example, the accompanying Senate Report states that, under existing law:
 
 
 29
 [D]efendants have been insisting at trial that the government present judicially admissible documentary evidence from the affected foreign nation to prove consent or denial of a claim of registry. These tactics have met with varying success, depending on the court. But prosecutors have had to go to great lengths to protect their cases from the possibility of an adverse ruling. Obtaining documents from foreign governments that are sufficient to withstand evidentiary objections in a U.S. courtroom can take months. This is especially the case because the foreign governments, unfamiliar with U.S. legal procedures, have to generate the required documents.
 
 
 30
 On occasion, delays in acquiring the necessary documents have jeopardized cases because of the U.S. constitutional requirement to afford defendants with a speedy trial. It is estimated that acquiring such documentation consumes from 2.5 to 8 days of U.S. Government personnel time for each case.
 
 
 31
 In the view of the Committee, only the flag nation of a vessel should have a right to question whether the Coast Guard has boarded that vessel with the required consent.
 
 
 32
 S.Rep. No. 530, 99th Cong., 2d Sess. 15-16 (1986), reprinted in 1986 U.S.Code Cong. & Admin.News 5986, 6000-01.
 
 
 33
 We resolve statutory ambiguity in favor of the criminal defendant. United States v. Cruz, 805 F.2d 1464, 1473 (11th Cir.1986), cert. denied, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987). Here, the ambiguity arises not from Congress's words but from the legislative history accompanying the statute. Although congressional documents provide a rich source in aid of interpreting legislative enactments, we cannot defer to these materials when the express language used by Congress points in a different direction. Cf. United States v. Garcia, 718 F.2d 1528, 1533 (11th Cir.1983) (review of legislative history only justified when statute is inescapably ambiguous), aff'd, 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984). We observe, therefore, that had Congress intended to deprive defendants of standing to object to the government's non-compliance with the terms of section 1903(a), Congress would not merely have prevented defendants from raising objections under "international law."
 
 
 34
 2. Admissibility of the document.--Defendants raise two evidentiary objections to the document. First, they argue that 46 U.S.C.App. Sec. 1903(c) provides the unique means by which foreign-government consent may be proved. The statute, which provides that "[c]onsent ... may be proved by certification of the Secretary of State or the Secretary's designee," by its own terms does not prevent the government from proving consent through the introduction of more traditional evidence. Congress sought merely to provide United States attorneys with an alternative method of proof that could alleviate difficulties in obtaining and translating foreign-government documents.
 
 
 35
 Second, defendants object that the document contains inadmissible hearsay; this objection is likewise without merit. The portion of the document explicitly granting consent to board the Don Yeyo is not hearsay at all; but rather a verbal act, similar to the utterances involved in making a contract, to which the law attaches independent significance. See 6 Wigmore on Evidence Sec. 1770 at 259 (Chadbourn rev. 1976).
 
 
 36
 The remainder of the document, indicating the Honduran registry of the Don Yeyo, was properly admitted under Federal Rule of Evidence 803(8)(A), which allows admission of public-agency statements, "in any form," setting forth "the activities of the office or agency." Registration of Honduran vessels is a regular activity of the Honduran government; that portion of the document thus constituted admissible hearsay. United States v. Stone, 604 F.2d 922, 925 (5th Cir.1979); United States v. Newman, 468 F.2d 791, 795-96 (5th Cir.1972), cert. denied, 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).
 
 
 37
 We acknowledge some disagreement with the Second Circuit's decision in United States v. Pinto-Mejia, 720 F.2d 248, 258 (2d Cir.1983), mod. on other grounds, 728 F.2d 142 (2d Cir.1984). The Second Circuit held inadmissible under Fed.R.Evid. 803(8)(A) a Venezuelan document stating that a vessel was not registered under the Venezuelan flag, holding (without discussion) that the document did not set forth "the activities of an office." Id. The Second Circuit characterized the statement as a "factual finding[ ] resulting from an investigation made pursuant to authority granted by law," the results of which are inadmissible against a criminal defendant, pursuant to Fed.R.Evid. 803(8)(C). We consider this reading of Fed.R.Evid. 803(8)(C) overly broad and the corresponding reading of Fed.R.Evid. 803(8)(A) overly narrow. When a public official merely verifies an entry in a public ledger, we would characterize the conduct as a routine activity and not an "investigation" yielding "factual findings." Stone, 604 F.2d at 925 (Fed.R.Evid. 803(8)(A) "is designed to allow admission of official records and reports prepared by an agency or government office for purposes independent of specific litigation"). Cf. United States v. Herrera-Britto, 739 F.2d 551, 552 (11th Cir.1984) (document from Honduran navy verifying non-registration of vessel admitted under Fed.R.Evid. 803(10), "Absence of public record or entry"); United States v. Martinez, 700 F.2d 1358, 1364-65 (11th Cir.1983).
 
 
 38
 Defendants also assert that the document was not properly presented to the jury. The trial transcript shows that the document was admitted into evidence on the first day of the trial, but was not translated until the second day of trial. The court translator, who was not sworn, made a viva voce translation just prior to closing arguments, but after the judge had announced that all the evidence had been presented. The defendants did not ask to cross-examine the translator to insure the accuracy of the translation, did not ask the judge to swear the translator, and did not request the judge to explain to the jury members that the document was evidence for their consideration.
 
 
 39
 The defense attorneys thus failed to call any omissions to the court's attention. As defense counsel has not on appeal shown that the document was translated erroneously, but has merely suggested that the document might have contained idiom with which the translator may have been unfamiliar, we see no reason to invoke the plain-error rule. United States v. Russell, 703 F.2d 1243, 1248 (11th Cir.1983).
 
 
 40
 3. Law or fact?--We are unable, on the basis of our prior precedents, to determine whether the question of consent, as evidenced by the document, constitutes an elemental fact that should have been found by the jury beyond a reasonable doubt; or whether consent vel non--and thus United States jurisdiction vel non--poses an issue to be determined as a matter of law by the court. Compare Gonzalez, 776 F.2d at 940 ("consent" is not an element of the offense defined in 21 U.S.C. Sec. 955a(c)) with United States v. Ayarza-Garcia, 819 F.2d 1043, 1048-49 (11th Cir.) (whether a vessel is "subject to the jurisdiction of the United States" for the purposes of 21 U.S.C. Sec. 955a(a) is a question of fact), cert. denied, --- U.S. ----, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987). See United States v. Henriquez, 731 F.2d 131, 136 (2d Cir.1984) (reserving question under 21 U.S.C. Sec. 955a(a) whether statelessness, and thus whether a vessel is subject to the jurisdiction of the United States, "is a matter going to subject matter jurisdiction or is an element of the crime").[8]
 
 
 41
 We need not inquire into this apparent conflict. We find the document sufficient as a matter of law to meet the consent requirement of 46 U.S.C.App. Sec. 1903(c)(1)(C). If the issue is one of fact, however, there was no error because admissible evidence of Honduran consent was presented to the jury. Thus, whether the issue is one of fact or law, the Don Yeyo was subject to the jurisdiction of the United States.
 
 F. Comments of Brack-Brack's lawyer
 
 42
 1. Comments highlighting certain defendants' decisions not to testify.--During his twenty-five minute closing argument, Brack-Brack's lawyer alluded to the fact that only one defendant other than Brack-Brack had chosen to testify. This commentary highlighted the other six defendants' decisions to remain silent.[9] Brack-Brack's attorney sought to convince the jury that his client had boarded the Don Yeyo without knowledge of the marijuana and then had been forced to master the vessel to Miami. Aurela-Zuniga, the only testifying codefendant, was the sole witness available to corroborate Brack-Brack's story. The lawyer wanted to explain his inability to offer more evidence to bolster Brack-Brack's theory of defense. Specifically, counsel stated:
 
 
 43
 Now, this is difficult to be in this situation where you have--where all these defendants are here together. I can't call witnesses. I can't just call--I couldn't call Mr. Aurela-Zuniga. It was very fortunate that he came on the stand, and its against the rules for me to talk to this man ahead of time. I can't talk to him. I have no idea what he is going to say.
 
 
 44
 * * *
 
 
 45
 Again, I can't call any of these other people to say the same thing, but the one person I could call [Aurela-Zuniga] said yeah, that's right. I mean, the captain stopped the boat as soon as he could. That is completely consistent with what [a Coast Guard officer] wrote down.
 
 
 46
 * * *
 
 
 47
 Again, Mr. Zuniga got up on the stand, Aurela. I don't even know which one. I mean, I couldn't point him out right now. He got up on the stand and the others didn't get up on the stand, and that's a right to get up on the stand. That's an absolute right. There is nothing wrong with that. He got up on the stand.
 
 
 48
 Judge Wisdom explained over twenty-five years ago that legitimate, non-excludable comment by counsel for one defendant may prejudice a codefendant's fifth-amendment privilege against self-incrimination, when counsel's remarks "draw the jury's attention to the possible inference of guilt from a co-defendant's silence." De Luna v. United States, 308 F.2d 140, 141 (5th Cir.1962). Two recent Eleventh Circuit cases have stated that the proper standard to apply when assessing such comments is "whether the statement was manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of an accused to testify." United States v. Zielie, 734 F.2d 1447, 1461 (11th Cir.1984), cert. denied, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); United States v. Vera, 701 F.2d 1349, 1362 (11th Cir.1983).
 
 
 49
 Were we to apply the Vera-Zielie standard to the statement, "He got up on the stand and the others didn't get up on the stand," we would hesitate to conclude that a jury would not "naturally and necessarily take it to be a comment on the failure of an accused to testify." The facts of Vera and Zielie differ from the instant appeal, however; in those two cases, counsel for a codefendant merely commented favorably on his own client's willingness to testify. Zielie, 734 F.2d at 1461; Vera, 701 F.2d at 1362. In the instant appeal, by contrast, we are presented with an actual reference to the silence of six defendants. Vera and Zielie thus do not control the outcome of this case.
 
 
 50
 The Vera-Zielie standard is derived from cases in which the allegedly improper comment was made by a prosecutor. United States v. Hartley, 678 F.2d 961, 983 (11th Cir.1982), cert. denied, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); United States v. Forrest, 620 F.2d 446, 455 (5th Cir.1980); United States v. Downs, 615 F.2d 677, 679 (5th Cir.), cert. denied, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980); United States v. Dearden, 546 F.2d 622, 625 (5th Cir.), cert. denied, 434 U.S. 902, 98 S.Ct. 295, 54 L.Ed.2d 188 (1977); Samuels v. United States, 398 F.2d 964, 967 (5th Cir.1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969). Given the prosecutor's institutional role, when the prosecutor merely "comments" on the failure of an accused to testify, the reference is in all likelihood calculated to encourage the jury to equate silence with guilt; reasonable judicial economy thus permits a finding of reversible error. When the "comment" comes from an actor (such as counsel for a codefendant) without an institutional interest in the defendant's guilt, however, it would be inappropriate to find reversible error as a matter of course. Instead, the court should ask whether the comment actually or implicitly invited the jury to infer guilt from silence. See United States v. Badolato, 701 F.2d 915, 924 (11th Cir.1983) ("De Luna is applicable only when the defenses are based on mutually exclusive theories of guilt.").
 
 
 51
 We therefore must consider the remarks of Brack-Brack's lawyer in the context in which they were presented to the jurors. The attorney did not proceed under a theory that some defendants were forced to sail the Don Yeyo and others were not; his theory posited that one Francisco, still at large in Colombia, had duped the entire crew, forcing the hapless sailors to transport the contraband to the United States:
 
 
 52
 Now, the question is, all right, you have got a gun to your head. You say listen Francisco, I don't believe you are going to pull the trigger, fire away. He is 40 miles offshore. He is taken there on a speed boat. Obviously everybody was taken there for a reason. Apparently he is the only one that they put a gun to as far as I know, but the idea is to get them all up there and say surprise, you are here now and now you are going. That's the way they do it.
 
 
 53
 * * *
 
 
 54
 So how do you do it? You get your lowly people, you get your suckers, you get the people you can intimidate and the ones you have to really--and they needed somebody to drive the boat, so they got a guy who has already been convicted of a crime, just got out of jail, classic organized crime, and say you are going to do it. They bring him out there and he is going to do it.
 
 
 55
 The lawyer's comments did not invite or require the jury to choose between the truth of Brack-Brack's story and the innocence of the non-testifying defendants;[10] the comments sought simply to explain counsel's difficulty in mustering evidence in support of his client's testimony. It is unlikely that the jurors would have been more disposed to convict the non-testifying defendants had they acquitted BrackBrack on the strength of his tale. Those defendants were unarmed,[11] and, after all, Brack-Brack's inferiors. Counsel's comments therefore did not risk leading the jury to infer guilt wholly or partly from the silent defendants' decisions not to testify. Their fifth-amendment rights were not prejudiced.
 
 
 56
 2. Evidence of prior criminal behavior? --In his testimony, Brack-Brack admitted that he was arrested and convicted in 1982 on a similar contraband charge. The seven crewmen object to the following statement made by Brack-Brack's lawyer during closing argument:
 
 
 57
 They picked [Brack-Brack] out. You pick out people that you can intimidate. You pick out people that you can violate. That's how organized crime works. You pick on the people that have got a little something on the bad side. You don't go to somebody who has never been in trouble before and put a gun to their head and say look, we want you to do something. You pick out something [sic] you already got something on, that you can have a little leverage over....
 
 
 58
 The crewmen argue that the statements of Brack-Brack's counsel unfairly suggested that, having been found aboard the boat, the crewmen must have also been "picked out" because they had previously been "in trouble." Brack-Brack's lawyer did not argue to the jury that every person aboard the vessel was necessarily there because of his prior criminal record. The lawyer simply wanted to underscore his client's defense of compulsion; we doubt the jury took these statements to mean anything more.
 
 G. The jury charge
 
 59
 1. Conspiracy.--Defendants argue that the judge's conspiracy instruction should have specifically cautioned:
 
 
 60
 Of course, mere presence at the scene of an alleged transaction or event or mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed names and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy does not thereby become a conspirator.
 
 
 61
 See United States v. Benz, 740 F.2d 903, 910-11 (11th Cir.1984) (discussing Fifth Circuit pattern jury charge for conspiracy), cert. denied, 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985). Defendant Brack-Brack requested the substance of this charge. The district court denied the request, but instructed the jury as follows:
 
 
 62
 Notice, however, that before any defendant can be held criminally responsible for the conduct of others, it is necessary that the defendant willfully associate himself in some way with the crime and willfully participate in it.
 
 
 63
 Mere presence at the scene of a crime, and even knowledge that a crime is being committed, are not sufficient to establish that the defendant either directed or aided and abetted the crime. You must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.
 
 
 64
 Clearly this charge included an acceptable "mere presence" instruction. Further, by impressing upon the jurors the need to find that each[12] defendant "willfully associate[d] himself in some way with the crime and willfully participate[d] in it," and by admonishing the jurors that they "must find beyond a reasonable doubt that [each] defendant was a willful participant and not merely a knowing spectator," the charge fairly advised the jury of the innocence of one "who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy." The instructions, viewed as a whole, were correct. United States v. Stone, 702 F.2d 1333, 1339 (11th Cir.1983).
 
 
 65
 2. Compulsion.--Brack-Brack argues that the judge improperly instructed the jury on compulsion, his theory of defense. A defendant has the right to a defense instruction--precise and specific rather than general and abstract, see United States v. Lewis, 592 F.2d 1282, 1286 (5th Cir.1979)--if he puts forth evidence sufficient to support the instruction. The judge gave an instruction on compulsion, but did not identify it as Brack-Brack's:
 
 
 66
 It is the theory of the defense in this case that although the defendant may have committed the acts charged in the indictment, he did not do so voluntarily, but only because of force or coercion in the form of intimidation and threats of bodily harm to himself or his family.
 
 
 67
 Brack-Brack argues that the jurors may have been confused into thinking that they had to find that all defendants acted under compulsion in order to acquit Brack-Brack on grounds of compulsion. Yet the jury form listed each defendant separately, thereby indicating that some defendants could be found guilty and others not guilty.
 
 
 68
 The judge is not required to identify the particular defendant to whom a particular theory of defense pertains; the charge, when viewed as a whole, need only fairly and correctly state the issues of law. United States v. Gordon, 817 F.2d 1538, 1542 (11th Cir.1987), vacated on other grounds, 836 F.2d 1312 (11th Cir.), cert. dismissed, --- U.S. ----, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988). At best, Brack-Brack could argue that the trial court abused its discretion in not identifying him as the defendant who put forth evidence of compulsion; but given that Brack-Brack was the only defendant who put forward such evidence, given that six of the remaining seven defendants did not present any evidence, and given that the jury understood it could acquit none, some or all of the defendants, that discretion was not abused.
 
 H. Sentencing
 
 69
 The defendants argue that they fell into an arbitrary sentencing gap. They were sentenced under a mandatory-minimum provision enacted by Congress in October of 1986. 21 U.S.C. Sec. 960. After their sentencing, a provision took effect that provides for mitigation of the mandatory-minimum sentence in certain circumstances. 18 U.S.C. Sec. 3553(e). The defendants claim that they were arbitrarily denied the benefit of the mitigating provision. We have, however, previously rejected the argument that defendants sentenced during the gap have suffered a constitutional injury. United States v. Sorondo, 845 F.2d 945, 948 (11th Cir.1988). This panel may not revisit the question.
 
 
 70
 Finally, the defendants argue that they were not charged with violation of "the amended 21 U.S.C. Sec. 960" and accordingly cannot be sentenced pursuant to it. This argument is likewise without merit. Assuming an indictment must specify the applicable sentencing provision, defendants were charged under 21 U.S.C. Secs. 955a & 955c, as amended by Pub.L. 99-570. Section 3202(g) of Pub.L. 99-570, amending 21 U.S.C. Secs. 955a & 955c, plainly indicates that the sentencing provisions of 21 U.S.C. Sec. 960 apply. The indictment itself made no reference to the fact that 21 U.S.C. Sec. 960 had been amended. We know of no requirement that it should have. See Hurwitz v. United States, 208 F.Supp. 594, 596 (S.D.Tex.1962) (reference to statute includes all subsequent amendments), aff'd, 320 F.2d 911 (5th Cir.1963), cert. denied, 376 U.S. 936, 84 S.Ct. 791, 11 L.Ed.2d 658 (1964).
 
 III.
 
 71
 We conclude review of this record satisfied that the United States accorded the defendants a fair trial. A jury has found each defendant guilty as charged in the indictment, the district judge has imposed sentences within his discretion, and we now AFFIRM both the convictions and sentences.
 
 
 
 *
 Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Esteban Angulo Perez, Wilfredo Aurela-Zuniga, Alfredo Brack-Brack, Regulo Cuesta Cogollo, Nurberto Diaz-Zabaleta, Manuel Medina-Tellez, Concepcion Mena and Humberto Tellez-Molina were convicted after a joint trial. The district court imposed sentences ranging from ten to twenty years' imprisonment depending upon the individual defendants' prior criminal records; all defendants were given a five-year term of supervised release; and all defendants were assessed $100
 
 
 [2]
 The district court ruled that a motion or an objection by counsel for one defendant would be considered a motion or objection by all. Following this pattern, the defendants all cross-reference their appellate briefs to those of their codefendants. To the extent an argument is relevant to a particular defendant's case, we will treat it as his
 
 
 [3]
 For example, defendants query whether, under 46 U.S.C.App. Sec. 1903(c)(1)(C), a foreign nation's consent to United States jurisdiction over a vessel would be effective if an "unauthorized person" gave that consent, or if the requesting United States official "misled" the foreign officer who volunteered his nation's consent
 
 
 [4]
 The defendants also challenge the statute as violative of certain treaties and other international agreements. The defendants, however, have not shown that they have standing to assert rights under any of these international compacts
 
 
 [5]
 See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (in banc). The Eleventh Circuit, sitting in banc, adopted as binding precedent all decisions rendered prior to October 1, 1981, by the former Fifth Circuit
 
 
 [6]
 See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir.1982). The Eleventh Circuit adopted as binding precedent all decisions rendered by Unit B of the former Fifth Circuit
 
 
 [7]
 46 U.S.C.App. Sec. 1903 provides in relevant part:
 (a) It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.
 * * *
 (c)(1) For purposes of this section, a "vessel subject to the jurisdiction of the United States" includes--
 * * *
 (C) a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States.
 * * *
 Consent or waiver of objection by a foreign nation to the enforcement of United States law by the United States under subparagraph (C) ... of this paragraph may be obtained by radio, telephone, or similar oral or electronic means, and may be proved by certification of the Secretary of State or the Secretary's designee.
 * * *
 46 U.S.C.A.App. Sec. 1903.
 
 
 [8]
 In Gonzalez, we construed language making it "unlawful for any person on board any vessel within the customs waters of the United States" to manufacture, possess, or distribute marijuana. 21 U.S.C. Sec. 955a(c) (now codified substantially in 46 U.S.C.App. Secs. 1903(a) & (c)(1)(D)). 776 F.2d at 940. With the consent of the flag nation, "customs waters of the United States" can be created around a particular vessel that otherwise would be sailing in international waters. See 19 U.S.C. Sec. 1401(j). We indicated that the government need not prove to the jury the consent necessary for the creation of "customs waters." 776 F.2d at 940 ("[i]t is misleading ... to consider ... consent an element of the offense " (emphasis in original)). See also United States v. Bent-Santana, 774 F.2d 1545, 1548-49 (11th Cir.1985); United States v. Alvarez-Mena, 765 F.2d 1259, 1264 (5th Cir.1985)
 In Ayarza-Garcia, however, we reached a contrary result after construing language making it "unlawful for any person ... on board a vessel subject to the jurisdiction of the United States" to manufacture, possess, or distribute marijuana. 21 U.S.C. Sec. 955a(a) (now codified substantially in 46 U.S.C.App. Sec. 1903(a)). We held that the question of jurisdiction vel non was for the jury. 819 F.2d at 1048-49. See also United States v. Molinares Charris, 822 F.2d 1213, 1218 (1st Cir.1987); United States v. Knight, 705 F.2d 432, 433 (11th Cir.1983).
 The precise questions differed--Gonzalez construed the term "United States customs waters;" Ayarza-Garcia construed the term "subject to the jurisdiction of the United States." Both terms, however, were found in the wording of a substantive offense, and both terms direct attention to the question of United States jurisdiction. Moreover, when Congress amended 21 U.S.C. Sec. 955a, it expanded the definition of "vessel subject to the jurisdiction of the United States" to include vessels located within United States customs waters. 46 U.S.C.App. Sec. 1903(c)(1)(D).
 
 
 [9]
 The district court instructed the jury generally that "[t]he law does not require a defendant to prove his innocence or produce any evidence at all, and if a defendant elects not to testify, you should not consider that in any way during your deliberations."
 
 
 [10]
 Compare comments of counsel in De Luna. De Luna's codefendant, Gomez, testified that De Luna had tossed him a package and ordered him to throw it from the car in which they rode. Unknown to Gomez, the package contained illegal narcotics. De Luna's lawyer argued that De Luna was being framed by Gomez; counsel elicited testimony from eye-witness police officers that they had not seen De Luna toss a package to Gomez. Gomez's attorney argued to the jury:
 Well, at least [Gomez] was honest enough and had courage enough to take the stand and subject himself to cross examination and tell you the whole story.... You haven't heard a word from [De Luna].
 308 F.2d at 143.
 
 
 [11]
 Defense counsel for the non-testifying defendants argue that Brack-Brack's lawyer sought to demonstrate that other crewmen aboard the Don Yeyo were armed, in order to raise the inference that the other seven defendants controlled Brack-Brack. Record testimony does not support this argument. Following is the colloquy between Brack-Brack's lawyer and a Coast Guardsman to which other defense counsel point:
 Q. Were there any weapons on board the boat or anything like that that anybody could defend themselves with?
 A. No.
 Q. Nowhere on the boat?
 A. There was a few pocket knives around, but that's it.
 Q. Not in [Brack-Brack's] possession?
 A. No.
 This colloquy does not support the inference that the other crewmen forced Brack-Brack to sail against his will.
 
 
 [12]
 The district judge informed the jurors: "you will note that the word defendant is used in the singular. Whenever I use that, I am applying it to each or all of the defendants. You can use that plurally or individually as the case may be."