[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11342

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LIVER GRUEZO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20327-KMM-3

_____

Before NEWSOM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Defendant Liver Gruezo appeals his convictions and 135-month sentence for (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) (Count 1) and (2) possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(a) (Count 2).

On appeal, Gruezo argues that (1) the district court did not have jurisdiction under the Maritime Drug Law Enforcement Act ("MDLEA"), (2) the MDLEA is unconstitutional, and (3) the district court erred when it did not apply the minor-role reduction to decrease his offense level by two levels. After careful review of the record and the parties' briefs, we affirm Gruezo's convictions and sentence.

## I.    BACKGROUND

On June 2, 2021, a federal grand jury charged Gruezo and two codefendants—Wilmar Estupinan Padilla and Yiminson Caicedo Vallecilla—with the drug crimes in Counts 1 and 2. Initially, Gruezo pled not guilty.

A.    Motion to Dismiss

On November 3, 2021, Gruezo moved to dismiss the indictment for lack of jurisdiction under the MDLEA. Gruezo's motion asserted that the Coast Guard failed to make all the necessary inquiries about the vessel's nationality, as required by the MDLEA. Gruezo requested an evidentiary hearing and proffered that, if granted an evidentiary hearing, he would testify to material facts demonstrating that the district court did not have jurisdiction.

On December 8, 2021, a magistrate judge held an evidentiary hearing on Gruezo's motion to dismiss. At that hearing, the government called U.S. Coast Guard Petty Officer Diego Rivera, who testified to the following events.

On May 5, 2021, Rivera's team intercepted a vessel. Gruezo, Estupinan, and Caicedo were all onboard the vessel. The team noticed that the vessel did not have (1) markings indicating its country of origin, (2) registration documents, (3) a country's flag, or (4) any other indicia of nationality.

Rivera, who spoke Spanish, acted as an interpreter. Rivera asked right-of-visit questions to determine the vessel's nationality. As Rivera did so, another officer transcribed the responses in a document called a Victor Report. Rivera testified that the purpose of a Victor Report is to determine the nationality of a vessel and to establish jurisdiction. The Victor Report here stated there were no registration documents on the vessel and no registration number on the vessel's hull.

During Rivera's questioning, Estupinan stated that he was the master of the vessel. Rivera asked Estupinan if he claimed a nationality for the vessel, and Estupinan responded "no." Rivera then asked whether the vessel had a nationality, and Estupinan responded "no." Both Gruezo and Caicedo remained silent during Rivera's questioning and did not interject at any point to claim nationality of the vessel.

Rivera's team reported the information to the Coast Guard Command Center, which directed them to treat the boat as without nationality and indicated that the team had the authority to conduct law enforcement boarding.

On cross-examination, Rivera testified that his team wrote another report that day called the Alpha Report. Rivera explained that the purpose of the Alpha Report was broader and typically described "the whole construction of the vessel, where we're at, [and] what we are observing." The Alpha Report here listed the nationality of the vessel as Colombian. Rivera testified that this was inaccurate and likely caused by a transcription error or an "honest mistake." Rivera explained that (1) the team's original reports, which were written with a grease pen on the vessel, were later rewritten to improve legibility, and (2) the version of the Alpha Report introduced by the defense was the rewritten version, as evidenced by the fact it was not written in grease pen.

Following the evidentiary hearing, the magistrate judge issued a report recommending that the district court deny Gruezo's motion to dismiss ("R&R"). First, the magistrate judge found that

Estupinan had not made a claim of Colombian nationality for the vessel.  The magistrate judge explained that (1) although Rivera's testimony conflicted with the Alpha Report, that Report was created under unclear circumstances and (2) the magistrate judge "afford[ed] little weight to the Alpha Report, recognizing its potential for impeachment, but credit[ed] . . . Rivera's testimony."

Second, the magistrate judge found that (1) under § 70502(d)(1)(B), an officer is required to ask about either nationality or registry of the vessel, and (2) Rivera had provided credible testimony that when he asked the vessel's master whether he claimed nationality for it, Estupinan replied "no."  The magistrate judge concluded that the vessel was appropriately deemed stateless and was subject to the jurisdiction of the United States.

Gruezo objected to the R&R.  The district court overruled Gruezo's objections, adopted the R&R, and denied Gruezo's motion to dismiss.

## B.    Guilty Plea

On January 26, 2022, Gruezo pled guilty to both counts in the indictment, without the benefit of a written plea agreement. Gruezo signed a factual proffer recounting the following specific events that he stipulated the government could prove beyond a reasonable doubt.

On May 5, 2021, while on patrol in the eastern Pacific Ocean, a U.S. Marine Patrol Aircraft detected a low-profile vessel north of

Darwin Island, Ecuador, in international waters. Coast Guard officers intercepted the vessel and observed (1) no vessel name, (2) no registration number, (3) no markings on the vessel, and (4) no other indicia of nationality.

Once on board, the officers asked the master of the vessel whether he claimed a nationality for it, and the master of the vessel did not do so. "Based on the master's failure to make a claim of nationality, the Coast Guard authorized the treatment of the vessel as one without nationality and conducted a full law enforcement boarding."

In doing so, the officers opened a hatch in the vessel and observed packages consistent with contraband. After removing the packages, officers conducted a field test of the packages' contents for narcotics. The test returned positive for cocaine, weighing approximately 1,390 kilograms, which the defendants were knowingly transporting. Gruezo conspired with Estupinan and Caicedo, as well as people in Colombia, to possess with intent to distribute five kilograms or more of cocaine while on board a vessel that was without nationality in international waters.

The magistrate judge presided over Gruezo's change of plea hearing and recommended that the district court accept Gruezo's guilty plea. Gruezo did not object to this recommendation, and the district court adopted it and accepted Gruezo's guilty plea.

### C.    Presentence Investigation Report ("PSR") and Gruezo's Objections

The probation officer prepared a PSR, which described the offense conduct consistent with the factual proffer.  The PSR also provided information from interviews of Estupinan, Caicedo, and Gruezo.

The PSR recommended an adjusted offense level of 33, consisting of (1) a base offense level of 38, (2) a two-level reduction under U.S.S.G. § 2D1.1(b)(18) because Gruezo met the criteria set forth in U.S.S.G. § 5C1.2(a)(1)–(5), and (3) a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).

With no criminal history points, Gruezo's criminal history category was I.  Gruezo's advisory guidelines range was 135 to 168 months' imprisonment.  As to both counts, Gruezo's statutory minimum term of imprisonment was 10 years and his statutory maximum was life imprisonment.  *See* 46 U.S.C. § 70506(a); 21 U.S.C. § 960(b)(1)(B)(ii).

Gruezo objected to the PSR and moved for a downward variance.  In his objections, Gruezo argued that he should receive a two-level reduction because he was a minor participant in the criminal activity.  Gruezo emphasized that the PSR had identified several uncharged individuals who were directly involved in the commission of the drug scheme.  Gruezo contended that those individuals, as well as Estupinan, played a much larger role in the planning and execution of the scheme than he had.  Gruezo argued

that he had merely served as a crewman on the drug boat and was involved in the scheme only for a brief period. In his motion for a downward variance, Gruezo requested a total sentence of "around" 70 months.

## D.     Gruezo's Sentencing

At sentencing, Gruezo reiterated his objection, emphasizing the roles of the other individuals involved and how his conduct, in comparison, was lesser and thus warranted a minor-role reduction. Citing *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999) (en banc), the district court explained that a minor-role reduction was not appropriate:

> [Gruezo] is being charged in an indictment involving himself and two others. He is not being charged with some larger conspiracy, so he's only being charged in connection with his conduct and his relationship to the two other individuals that are involved in that conspiracy, and not some larger conspiracy.

> So I believe pursuant to United States vs. De Varon, that the probation officer has correctly calculated the guidelines, and the Court will deny the motion for an adjustment for either a minor or a minimal role in the offense. Okay?

The district court sentenced Gruezo to 135 months' imprisonment as to each count, to be served concurrently, followed by two years of supervised release. Gruezo renewed all his objections, written and oral.

Gruezo timely appealed.

## II.    JURISDICTION

On appeal, Gruezo argues that the district court did not have jurisdiction under the MDLEA.  First, we provide an overview of MDLEA jurisdiction and our standard of review.  Second, we explain why jurisdiction exists and Gruezo's arguments fail.

### A.    MDLEA Jurisdiction

The MDLEA makes it a crime to possess with intent distribute a controlled substance or conspire to do so "[w]hile on board a covered vessel."  46 U.S.C. § 70503(a). A vessel is covered by the MDLEA if it is "subject to the jurisdiction of the United States."  *Id.* § 70503(e)(1).  As relevant here, a vessel is "subject to the jurisdiction of the United States" if it is "a vessel without nationality."  *Id.* § 70502(c)(1)(A).

Under the MDLEA, one definition of "a vessel without nationality" is "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel."  *Id.* § 70502(d)(1)(B).

The government bears the burden of establishing that the statutory requirements of MDLEA jurisdiction are met.  *United States v. Cabezas-Montano*, 949 F.3d 567, 588 (11th Cir. 2020).

## B.    Standard of Review

We review de novo a district court's subject matter jurisdiction even when it is raised for the first time on appeal. *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016); *see also Cabezas-Montano*, 949 F.3d at 587 (explaining that "the MDLEA's jurisdictional requirement goes to the subject-matter jurisdiction of the courts"). We review for clear error the district court's factual findings relevant to jurisdiction. *Iguaran*, 821 F.3d at 1336. While parties may not stipulate to jurisdiction, they may "stipulate to facts that bear on [this Court's] jurisdictional inquiry." *Id.* at 1337 (emphasis and quotation marks omitted). "A court's task is to determine whether the stipulated facts give rise to jurisdiction." *Id.* (quotation marks omitted).

## C.    The District Court Had Jurisdiction under the MDLEA

Here, Gruezo stipulated that the vessel had "no indicia of nationality visible" and that when the master of the vessel was asked "do you claim a nationality for the vessel and does this vessel have a nationality," the master "made no claim of nationality for the [vessel]." (Quotation marks omitted.) That alone is sufficient for this Court to affirm the determination that the vessel was subject to the jurisdiction of the United States. 46 U.S.C. § 70502(c)(1)(A), (d)(1)(B).

In any event, we address Gruezo's three arguments about jurisdiction, all of which are unpersuasive.

First, Gruezo argues that the magistrate judge erred when it relied on his and Caicedo's silence as evidence that the vessel lacked nationality. That argument evinces a misunderstanding of the magistrate judge's R&R. In its "evidence presented" section, the magistrate judge wrote: "[Gruezo] and Caicedo were also present during the questioning and did not say anything nor did they dispute Estupinan's claim that the vessel did not have nationality." In its analysis, however, the magistrate judge did not mention, rely on, or assign weight to Gruezo's and Caicedo's silence in finding that the vessel was one without nationality. Instead, the magistrate judge focused entirely on Estupinan's actions, and the discrepancy between the Alpha Report and the Victor Report. Accordingly, the magistrate judge did not err in this respect.

Second, Gruezo argues that Rivera could not resolve the conflicts between the Alpha Report and the Victor Report because his testimony was "rambling and rife with uncertainties." But the district court found that Rivera's testimony was credible, and this Court "accord[s] great deference to a district court's credibility determinations." *United States v. Cavallo*, 790 F.3d 1202, 1227 (11th Cir. 2015). "[W]e will not reverse a district court's factual finding concerning credibility unless the finding is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id.* (quotation marks omitted). Rivera gave a reasonable explanation for the discrepancy between the two Reports, and his testimony was not so improbable that no reasonable factfinder could credit and accept it.

Third, Gruezo argues that the magistrate judge erred in concluding that § 70502(d)(1)(B) did not require the Coast Guard to ask the master to make a claim of *both* nationality and registry for the vessel. We are unpersuaded.

The plain text of § 70502(d)(1)(B) uses the word "or" to connect "nationality" and "registry," 46 U.S.C. § 70502(d)(1)(B), and "or" is "almost always disjunctive," *United States v. Woods*, 571 U.S. 31, 45, 134 S. Ct. 557, 567 (2013). Of course, "statutory context can overcome the ordinary, disjunctive meaning of 'or.'" *Encino Motorcars, LLC v. Navarro*, --- U.S. ----, 138 S. Ct. 1134, 1141 (2018). But, here, context favors the ordinary disjunctive meaning of "or."

To begin with, the MDLEA treats the terms "nationality" and "registry" as interchangeable throughout § 70502. For example, § 70502(e) jointly defines "[a] claim of nationality or registry" to "include[] only":

> (1) possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas;
>
> (2) flying its nation's ensign or flag; or
>
> (3) a verbal claim of nationality or registry by the master or individual in charge of the vessel.

46 U.S.C. § 70502(e). The interchangeability and equivalency of these two terms in the MDLEA is further evidenced by § 70502(d)(1)(C), where the rejection of a master's claim of *registry*

is premised on the named country's failure to confirm *nationality*. *See id.* § 70502(d)(1)(C).

In addition, this Court previously has read the terms to be disjunctive. In *Iguaran*, for example, this Court noted that "the term vessel without nationality includes a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a *claim of nationality or registry* for that vessel." 821 F.3d at 1337 (emphasis added) (quotation marks omitted). Immediately after setting forth that definition, this Court explained that, under that definition, if the defendants "failed, on request of the United States officials who apprehended them, to make a claim of *nationality*, their vessel was *without nationality* and subject to the jurisdiction of the United States." *Id.* (emphases added) (quotation marks omitted). In other words, the master's failure to claim nationality was sufficient for the vessel to be subject to the jurisdiction of the United States under the MDLEA.

Accordingly, Estupinan's failure to claim nationality when asked by the Coast Guard is sufficient to show the vessel was without nationality and subject to the jurisdiction of the United States. 46 U.S.C. § 70502(d)(1)(B).

### III.    CONSTITUTIONALITY OF THE MDLEA

Next, Gruezo argues the MDLEA is unconstitutional for three reasons: (1) it is overly vague; (2) it violates his *Miranda*[1] rights because it does not require law enforcement to inform the master of the vessel of the consequences of failing to make a claim of nationality or registry; and (3) due process prohibits the prosecution of foreign nationals who (i) do not have "minimum contacts" with the United States and (ii) committed offenses that do not have a "nexus" to the United States.

We review de novo the constitutionality of a criminal statute. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).

### A.    Vagueness

Gruezo argues that the MDLEA is overly vague and ambiguous because it does not require the Coast Guard to explain what it means to "make a claim of nationality or registry for the vessel."

This challenge is unpersuasive, as the text of § 70502(d)(1)(B) is sufficiently clear to give ordinary people notice that, without a claim of nationality or registry for the vessel upon request, the vessel will be considered stateless for purposes of jurisdiction under the MDLEA.  46 U.S.C. § 70502(d)(1)(B).

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

In addition, this Court repeatedly has rejected constitutional vagueness challenges to the jurisdictional provisions in the MDLEA's predecessors. *See, e.g.*, *United States v. Mena*, 863 F.2d 1522, 1527 (11th Cir. 1989) (rejecting a vagueness challenge to a jurisdictional provision of the MDLEA's predecessor statute because "[t]hose embarking on voyages with holds laden with illicit narcotics, conduct which is contrary to the laws of all reasonably developed legal systems, do so with the awareness of the risk that their government may consent to enforcement of the United States' laws against the vessel" (quotation marks omitted)); *United States v. Marino-Garcia*, 679 F.2d 1373, 1384 (11th Cir. 1982) (rejecting a vagueness challenge to a jurisdictional provision of the MDLEA's predecessor statute and explaining that even though the phrase "vessel without nationality" was undefined in the statute, it "obviously encompasse[d] vessels not operating under the flag and authority of any sovereign nation").

B.    *Miranda*

Gruezo contends that the MDLEA violates his *Miranda* rights because it does not require law enforcement to inform the master of the vessel of the consequences of failing to make a claim of nationality or registry.

To the extent Gruezo asserts that § 70502(d)(1)(B) is unconstitutional as applied to the facts of his case, his claim is waived by his guilty plea. *See United States v. Castillo*, 899 F.3d 1208, 1214 (11th Cir. 2018) ("A valid guilty plea renders irrelevant— and thereby prevents a defendant from appealing—the

constitutionality of case-related government conduct that takes place before the plea is entered." (cleaned up)).

To the extent Gruezo asserts that § 70502(d)(1)(B) is facially unconstitutional, our prior precedent forecloses his facial challenge. "This [C]ircuit has long recognized that the Coast Guard's routine stop, boarding[,] and inspection of an American vessel on the high seas does not normally rise to the level of custodial detention thus requiring *Miranda* warnings." *United States v. Rioseco*, 845 F.2d 299, 302–03 (11th Cir. 1988). This Court in *Rioseco*, for example, concluded that the defendant was not in custody for *Miranda* purposes when five Coast Guard officers, having probable cause, boarded the vessel and ordered the crew members to remain in a particular area of the vessel. *Id.* at 303. It determined that an ordinary man would not believe that he was in custody because (1) the officers did not tell the defendant he was in custody or under arrest and (2) the officers' conduct "was simply routine procedure in a usual boarding action." *Id.*

## C.    Due Process Clause

Gruezo also challenges the constitutionality of the MDLEA under the Due Process Clause. "The Due Process Clause prohibits the exercise of extraterritorial jurisdiction over a defendant when it would be arbitrary or fundamentally unfair." *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016) (quotation marks omitted). A defendant challenging the facial validity of a statute must show that "no set of circumstances exists under which the

[statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987).

Congress enacted the MDLEA to define and punish felonies committed on the high seas. *United States v. Campbell*, 743 F.3d 802, 805 (11th Cir. 2014). This Court in *Campbell* held that "the conduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach." *Id.* at 810. We explained that, given that trafficking drugs is "condemned universally by law-abiding nations," it is not "fundamentally unfair" to punish those who traffic drugs on the high seas. *Id.* (quotation marks omitted). We further determined that the prosecution of a foreign national for "drug trafficking aboard [a] stateless vessel[] on the high seas" is not prohibited by the Due Process Clause, as the MDLEA "provides clear notice that all nations prohibit" such conduct. *Id.* at 812; *see also Cabezas-Montano*, 949 F.3d at 587 ("[T]his Court has held that the Fifth Amendment's Due Process Clause does not prohibit the trial and conviction of aliens captured on the high seas while drug trafficking because the MDLEA provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas.").

Here, Gruezo fails to show that the absence of a "minimum contacts" or "nexus" requirement in the MDLEA violates the Due Process Clause. He points to no precedent from this Court or the Supreme Court applying the "minimum contacts" standard to the MDLEA, and his "nexus" argument is foreclosed by our precedent.

Therefore, Gruezo's MDLEA convictions do not violate the Due Process Clause.

## IV.    MINOR-ROLE REDUCTION

Lastly, Gruezo argues that the district court erred by declining to reduce his offense level by two levels under U.S.S.G. § 3B1.2 because he was only a minor participant in the criminal activity.

We review for clear error a district court's determination of a defendant's role. *De Varon*, 175 F.3d at 937. The district court has "considerable discretion in making this fact-intensive determination." *United States v. Boyd*, 291 F.3d 1274, 1277–78 (11th Cir. 2002). As long as the district "court's decision is supported by the record and does not involve a misapplication of the law," the "choice between two permissible views of the evidence as to the defendant's role in the offense will rarely constitute clear error." *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016) (quotation marks omitted).

Section 3B1.2 of the Sentencing Guidelines directs the sentencing court to decrease a defendant's offense level by two levels "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2. A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* cmt. 5. The defendant "bears the burden of proving a mitigation role in the

offense by a preponderance of the evidence." *De Varon*, 175 F.3d at 939.

Here, Gruezo argues that he was entitled to a minor-role reduction because Estupinan and several uncharged individuals were directly involved in the planning and execution of the drug scheme, while he worked only as a crewman for a brief period. Gruezo criticizes the district court for (1) focusing on a hypothetical "sub-conspiracy" that included only the crew members of the vessel and (2) never acknowledging the existence of other participants in the conspiracy.

Gruezo's argument is directly foreclosed by our binding precedent. In *De Varon*, we "unambiguously held that a defendant's role in the offense may not be determined on the basis of criminal conduct for which the defendant was not held accountable at sentencing." 175 F.3d at 941. Gruezo was charged in an indictment that involved two other people and did not involve some larger, unspecified conspiracy. *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015) ("Only those participants who were involved in the relevant conduct attributed to the defendant may be considered." (quotation marks omitted)). Gruezo may not prove he is entitled to a minor-role reduction by pointing to a broader criminal scheme in which he was a minor participant but for which he was not charged.

Further, as to Estupinan, Gruezo has not shown that the district court clearly erred in denying him a minor-role reduction. Gruezo's involvement—as a crewmember of a vessel that was

smuggling a large quantity of drugs—was still serious and important enough to warrant the denial of a minor-role reduction under § 3B1.2. Gruezo knowingly participated in the illegal transportation of a large quantity of cocaine, he and his transportation role were important to that scheme, and he was held accountable for that conduct only. *Cabezas-Montano*, 949 F.3d at 607 (considering these same factors in affirming the denial of a minor-role reduction); *see also United States v. Valois*, 915 F.3d 717, 732 (11th Cir. 2019) (same).

We conclude that the district court did not err, clearly or otherwise, in finding that Gruezo did not qualify for a minor-role reduction.

## V. CONCLUSION

For all these reasons, we affirm Gruezo's convictions and sentence.

**AFFIRMED.**