53 F.3d 1212
 42 Fed. R. Evid. Serv. 548
 UNITED STATES of America, Plaintiff-Appellee,
v.
Yerco Huerta ROJAS, Edwardo Gomez Verdugo, Manuel
Flores-Flores, Fernando Gonzalez Lopez, Manuel Perez Vera,
Amillio Heriquez, Carlos Zulaga, Edwardo Marco Diaz, Juan
Antonio Orlandi-Steiger, Guillermo Guerrero, Osvaldo Sotgiu,
Louis Lorenzo Berrios, John Castillo Tramon, Claudio Perez,
Luis Arangena, Hector Herman Vidal-Arancibia, Gillermo
Quesada, Defendants-Appellants.
 No. 92-5039.
 United States Court of Appeals,
Eleventh Circuit.
 June 7, 1995.
 
 G. Richard Strafer, Quinon & Strafer, P.A., Miami, FL, for Rojas.
 Harry M. Solomon, Miami, FL, for Verdugo, Sotgiu, Tramon.
 Benjamin S. Waxman, Robbins, Tunkey, Ross, Amsel & Raben, Miami, FL, for Flores, Lopez, Arangena, Arancibia.
 Nathan P. Diamond, P.A., Miami, FL, for Vera, Diaz, Guerrero, Quesada.
 Michael J. Rosen, Rosen Law Offices, P.A., Miami, FL, for Henriquez, Berrios, Perez, Orlandi-Steiger.
 Roy J. Kahn, Miami, FL, for Zulaga.
 Kendall B. Coffey, U.S. Atty., Phillip DiRosa, Dawn Bowen, Linda Collins Hertz, Asst. U.S. Attys., Miami, FL, for appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before ANDERSON and BIRCH, Circuit Judges, and JOHNSON, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 On January 6, 1992, the United States Coast Guard seized the Panamanian vessel M/V Harbour (the "Harbour") in international waters. Upon boarding the ship, the Coast Guard discovered cocaine concealed underneath zinc concentrate in one of the cargo holds. Appellants, 17 of the Harbour's crew, were convicted of conspiracy to possess with intent to distribute, and possession with intent to distribute, cocaine aboard a vessel subject to the jurisdiction of the United States, in violation of 46 App.U.S.C.A. Secs. 1903(j) and (g) (Counts I and II); and attempt to import cocaine into the United States, in violation of 21 U.S.C. Secs. 963, 960, and 952(a) (Count III). On this direct appeal, appellants argue that the Maritime Drug Law Enforcement Act (the "MDLEA"), U.S.C. Secs. 1901, et seq., in particular 46 App.U.S.C.A. Sec. 1903(c)(1)(C), is unconstitutional as a violation of the principal of separation of powers, due process, and the confrontation clause.[1] We affirm.
 
 I. THE MARITIME DRUG LAW ENFORCEMENT ACT
 
 2
 Under the Maritime Drug Law Enforcement Act, 46 App.U.S.C.A. Secs. 1901, et seq., "[i]t is unlawful for any person ... on board a vessel subject to the jurisdiction of the United States ... to knowingly or intentionally ... possess with intent to manufacture or distribute, a controlled substance." 46 App.U.S.C.A. Sec. 1903(a). The Act also criminalizes conspiracy to violate subsection (a). 46 App.U.S.C.A. Sec. 1903(j). Vessels "subject to the jurisdiction of the United States" include vessels "registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of the United States law by the United States." 46 App.U.S.C.A. Sec. 1903(c)(1)(C). Such consent "may be obtained by radio, telephone, or similar oral or electronic means, and may be proved by certification of the Secretary of State or the Secretary's designee." 46 App.U.S.C.A. Sec. 1903(c)(1). In this case, the Panamanian government's consent to search the Harbour, a Panamanian vessel, was evidenced by certificate pursuant to Sec. 1903(c)(1)(C). Appellants argue that this certification procedure is unconstitutional.
 
 II. SEPARATION OF POWERS
 
 3
 Appellants assert that the MDLEA's certification procedure unconstitutionally delegates the ability to determine jurisdiction, "a traditional, if not vital, function of the Judiciary," to the Executive Branch. "The Constitution's division of power among the three Branches is violated where one Branch invades the territory of another...." New York v. United States, 505 U.S. 144, ----, 112 S.Ct. 2408, 2431, 120 L.Ed.2d 120 (1992). Thus, the Legislative and Executive Branches may not encroach on what is an "inherently" judicial power. Because the courts have had few opportunities to address attempts by the other Branches to interfere with the core functions of the Judiciary, see In re Stone, 986 F.2d 898, 901 (5th Cir.1993) (noting that there have been fortunately few legislative attempts to interfere with core judicial powers), the exact scope of this "inherent judicial power" is uncertain. At its core, the Judiciary's constitutional function is the impartial, independent, and final adjudication of disputes within the jurisdiction of the courts. U.S. Const. art. III; see also Plaut v. Spendthrift Farm, Inc., --- U.S. ----, ----, 115 S.Ct. 1447, 1452, 131 L.Ed.2d 328 (U.S.1995) (The Constitution "gives the Federal Judiciary the power, not merely to rule on cases, but to decide them." (emphasis in original)); Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 58-60, 102 S.Ct. 2858, 2865, 73 L.Ed.2d 598 (1982) (The purpose of life tenure and irreducible compensation under Article III is "to ensure the independence of the Judiciary from the control of the Executive and Legislative Branches of government."); Application of President's Comm'n on Organized Crime, 763 F.2d 1191, 1197 (11th Cir.1985) ("Impartiality is one of the central, constitutionally-ordained requirements of federal judicial office...."). Thus, separation of powers would be implicated when the actions of another Branch threaten an Article III court's independence and impartiality in the execution of its decisionmaking function. See, e.g., Plaut, --- U.S. at ----, 115 S.Ct. at 1455-56 (Congress cannot retroactively command federal courts to reopen final judgments); Northern Pipeline, 458 U.S. at 70, 102 S.Ct. at 2871 (Congress cannot remove adjudication of an entire class of "private rights" from the Judiciary and give such adjudication to non-Article III courts); United States v. Klein, 80 U.S. (13 Wall.) 128, 146-147, 20 L.Ed. 519 (1871) (Congress may not interfere with a court's inherent power to decide cases by dictating a decision in a particular case); Hayburn's Case, 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792) (Final decisions of federal courts cannot be subject to review by Executive Branch).
 
 
 4
 This is not a case in which the other branches have interfered with the independence or impartiality of an Article III court, or with its decisionmaking role in a case which is under its jurisdiction. The challenged certification provision merely provides a method by which the Executive Branch may evidence that it has obtained a foreign nation's consent to jurisdiction. See United States v. Mena, 863 F.2d 1522, 1523 (11th Cir.) (In enacting the MDLEA's certification procedure, "Congress sought merely to provide United States attorneys with an alternate method of proof that could alleviate difficulties in obtaining and translating foreign-government documents."), cert. denied, 493 U.S. 834, 109 S.Ct. 109, 110, 107 L.Ed.2d 72 (1989). Nothing in the certification procedure deprives the court of its ability and obligation to determine whether the requirements of the MDLEA have been met. The Act does not dictate the court's jurisdictional decision. Under the MDLEA, courts are free to determine, and do decide, whether a proffered certificate is sufficient evidence of jurisdiction. See, e.g., Mena, 863 F.2d at 1531-33 (holding that proffered certificate was admissible and sufficient to meet consent requirement); United States v. Robinson-Munoz, 961 F.2d 300, 305 (1st Cir.1992) (holding that certificate contained sufficient information to establish jurisdiction beyond a reasonable doubt).[2]
 
 
 5
 Moreover, contrary to appellants' assertion, the power to determine the jurisdiction of the courts of the United States is not purely judicial. Although Article III defines the outer limits of jurisdiction, the Judicial Branch relies on the Legislative Branch to define the exact parameters of such power. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 174, 2 L.Ed. 60 (1803). The courts also rely on the Executive, in conjunction with the Senate, to define the scope of jurisdictional authority through treaty. U.S. Const. art. II, Sec. 2 ("The President ... shall have Power, by and with the Advice and Consent of the Senate, to make Treaties"); 28 U.S.C. Sec. 1331 ("The district courts shall have original jurisdiction of all civil actions arising under ... treaties of the United States."). Therefore, the scope of the jurisdiction of our courts is a domain which all branches of our government must share to some extent.
 
 
 6
 We need not decide whether there may be aspects to a jurisdiction question that are uniquely adjudicative, and thus properly reserved to the Judicial Branch. Negotiation with a foreign nation for permission to impose United States law in that nation's territory is certainly not an inherently judicial function. We readily conclude that the certification procedure does not implicate separation of powers.
 
 III. DUE PROCESS
 
 7
 Appellants also argue that the certification procedure violates due process because it creates a mandatory rebuttable presumption that the government, upon introduction of the certificate, has satisfied the jurisdiction element of the offense. "[A] mandatory rebuttable presumption requires a jury to find that the presumed fact follows from the proven fact unless the defendant produces evidence to rebut the existence of the presumed fact." Miller v. Norvell, 775 F.2d 1572, 1575 (11th Cir.1985) (emphasis in original), cert. denied, 476 U.S. 1126, 106 S.Ct. 1995, 90 L.Ed.2d 675 (1986). Such presumption violates the Due Process Clause if it relieves the government of the burden of persuasion on an element of the offense. Francis v. Franklin, 471 U.S. 307, 314, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985).
 
 
 8
 Appellant's argument is misplaced. In this case, the court instructed the jury that it must find all of the elements of the offense beyond a reasonable doubt, including the element that the appellants were aboard a vessel subject to the jurisdiction of the United States.[3] The jury was not instructed that it must find, or even that it should find, that jurisdiction follows from the introduction of the certificate. There was no instruction whatsoever regarding how much weight the jury should give the certificate. Simply stated, no mandatory presumption was created. Moreover, the instruction placed the burden of proving the jurisdictional element of the offense on the prosecution.
 
 IV. CONFRONTATION CLAUSE
 
 9
 Appellants' final argument is that the certificate contains inadmissable hearsay and, thus, its introduction at trial violated the Confrontation Clause. To the extent that the document evidences the Panamanian government's consent, it is a verbal act and, therefore, not hearsay. Mena, 863 F.2d at 1531. The remainder of the document is a public document, admissible under Fed.R.Evid. 803(8)(A). Id. Such certification by a government official falls within a well-established exception to the hearsay rule, and is not a violation of the Confrontation Clause. United States v. Aikins, 946 F.2d 608, 614 (9th Cir.1990).
 
 V. CONCLUSION[4]
 
 10
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 Appellants also argue that: (1) the certificate of Panama's consent to United States jurisdiction did not satisfy the requirements of 46 App.U.S.C.A. Sec. 1903(c)(1)(C); (2) the district court erred in denying a motion to suppress evidence seized in a warrantless search of crew members' cabins; (3) the district court erred in denying a motion to suppress evidence derived from the seizure of appellants' clothing while appellants were in post-arrest custody; (4) the district court erred in admitting the "prior bad acts" of Barria and Aravena under Fed.R.Evid. 404(b); (5) the district court erred in allowing the expert testimony of witnesses Lori Reiser, Daniel Lopez, Edward Kacerosky, and Brian Williamson under Fed.R.Evid. 702; (6) the evidence was insufficient to support appellants' convictions; (7) the district court erred in denying a motion to voir dire the jury to determine whether there had been premature discussion of the case; (8) the prosecutor's prejudicial remarks in opening statement and closing argument warrant a new trial; (9) the sentencing guidelines violate the Administrative Procedure Act; (10) the district court should have departed downward on Rojas' sentence because the extremely large quantity of drugs involved skewed his sentence, and because of the collateral consequences of his status as a deportable alien; and (11) the district court erred in concluding it could not depart downward on Vera's sentence under U.S.S.G. Sec. 5H1.1 due to his age and health alone, without demonstration of any "extraordinary" infirmity. These arguments are without merit
 
 
 [2]
 We express no opinion as to whether a vessel is "subject to the jurisdiction of the United States" under the MDLEA is a question of law for the court to decide, or a question of fact reserved to the jury. See Mena, 863 F.2d at 1532 (discussing conflict over whether jurisdiction is question of law or fact). Whether the question is resolved by the jury or the judge is not relevant to our separation of powers analysis in this case
 
 
 [3]
 The court instructed the jury as follows:
 .. Count 2 charges the defendants with a violation of Title 46, Section 1903(a) and 1903(g). These sections make it a federal crime for anyone on board a vessel subject to the jurisdiction of the United States to knowingly possess any controlled substance with intent to distribute it.
 ...
 The defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt. First, that the defendant was on board a vessel subject to the jurisdiction of the United States.
 ...
 The term "vessel subject to the jurisdiction of the United States" means a vessel registered in a foreign nation where the flagged nation has consented or waived objection to the enforcement of the United States law by the United States.
 
 
 [4]
 Appellant Aravena's motion to withdraw his appeal because of his alleged dissatisfaction with counsel is DENIED. His motion to appoint new counsel and proceed in forma pauperis is DENIED. His asserted reasons are frivolous