**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Manuel Abraham Casteneda MEDINA, Ismael Ramirez Fajardo, Domingo Rafael Ortiz Cotoa, Miguel Martinez–Rios, Francisco Sanchez Martinez, Defendants–Appellants.**

No. 91–6103.

United States Court of Appeals, Eleventh Circuit.

Aug. 6, 1996.

Leo Spitale, Jr., Miami, FL, for appellants.

Elio Vazquez, Miami, FL, for appellant Fajardo.

Rhonda A. Anderson, Miami, FL, for appellant Cotoa.

Helen C. Tranior, Miami, FL, for appellant Rios.

William A. Keefer, U.S. Atty., Christopher R.J. Pace, Asst. U.S. Atty., Miami, FL, for appellee U.S.

Richard J. Diaz, Miami, FL, for appellant Martinez.

Before EDMONDSON, Circuit Judge, and FAY and GIBSON *, Senior Circuit Judges.

EDMONDSON, Circuit Judge:

Defendants Francisco Sanchez–Martinez, Miguel Martinez–Rios, Ismael Ramirez–Fajardo, Manuel Castaneda–Marin, and Domin-

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

go Ortiz–Cotoa appeal their convictions and sentences for conspiracy to possess and possession of cocaine with intent to distribute while on board a vessel subject to United States jurisdiction in violation of 46 U.S.C. app. §§ 1903(a) and 1903(j) and 18 U.S.C. § 2. We vacate and remand for a new trial consistent with this opinion.

## Background

While observing the vessel the Miss Shelley ("MS") by helicopter, Charles Bakes, a United States Coast Guard petty officer, saw someone throw a brown package overboard. Bakes also noticed that the MS was riding low in the water. Other packages, later found to contain cocaine, were floating behind the boat. When the MS ran aground a couple of miles off the coast of Haiti, a boarding team headed by Chief Warrant Officer Robert Jeffreys positioned itself forty feet from the MS and waited for Haiti's permission to board. Then, Jeffreys questioned the crew, who spoke only Spanish, through a Spanish-speaking coast guardsman.

Jeffreys was told that the captain of the MS had debarked earlier—taking with him the ship's registration and papers, that the crew members were Colombian, that the MS had come from Columbia, and that they were headed for Haiti. After receiving permission from Haiti, the Coast Guard boarded the MS, arrested the six crew members, and searched the vessel. No cocaine was found in plain view. A "destructive search" conducted the next day revealed cocaine hidden in the wall of the MS. The amount of cocaine seized (from the packages thrown overboard and those found on the MS) was 316 kilograms.

Each of the six crew members was later questioned ashore by a Drug Enforcement Administration ("DEA") agent. All six said that they were hired in Columbia to sail food products to Haiti, that three additional crew members, including the captain, were on board when they left, but departed before the Coast Guard stopped them, and that they did not know there was cocaine on the boat. All six (Martinez–Rios, Ramirez–Fajardo, Castaneda–Marin, Sanchez–Martinez, Ortiz–Cotoa and Carmargo–Silvera) were charged with conspiracy to possess and with possessing cocaine with intent to distribute it in violation of 46 U.S.C. app. §§ 1903(a) and 1903(j), and 18 U.S.C. § 2. Carmargo–Silvera pled guilty and testified on behalf of the government.[1] The remaining five went to trial and were convicted.

## Discussion

Defendants claim the district court erred by deciding, as a matter of law, that the MS was subject to the jurisdiction of the United States as required by 46 U.S.C. app. § 1903(a).[2] Defendants claim that jurisdiction is an element of the offense and should

---

1. Carmargo–Silvera testified as follows: He was taken by bus to where the MS was docked in Columbia. When he arrived, five men unloaded packages that were on the bus; and then the five men, plus Carmargo–Silvera and a man named Mr. Walter, boarded the MS. After Carmargo carved an opening in the side of the MS, Mr. Walter and another person placed the contents of the packages in the secret compartment. Additional packages were placed in the cargo hold—hidden underneath food products. During this time, Defendants remained in the passenger area of the boat. The MS then set sail with Carmargo and Defendants as its only crew. Ramirez–Fajardo was the captain, Ortiz–Cotoa the mechanic, Sanchez–Martinez the helmsman and Martinez–Rios and Castaneda–Marin the crew members. When the Coast Guard helicopter flew over the MS, Ramirez–Fajardo remarked "they had caught us" and ordered Castaneda–Marin and Martinez–Rios to help him throw the packages of cocaine overboard. Also thrown overboard were some maps, a firearm, and the fiberglass-work-

ing tools. Carmargo–Silvera also testified that Ramirez–Fajardo instructed the crew about what story to tell to the Coast Guard.

2. A vessel subject to the jurisdiction of the United States includes a "vessel without nationality" and a "vessel located in the territorial waters of another nation, where the nation consents to the enforcement of the United States law by the United States." 46 U.S.C. app. § 1903(c)(1). Under 46 U.S.C. app. § 1903(c)(2), a "vessel without nationality" includes

   (A) a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed; and
   (B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel.

have been submitted for determination by the jury. *See U.S. v. Ayarza–Garcia,* 819 F.2d 1043, 1048–49 (11th Cir.1987) (holding under predecessor to 46 U.S.C. app. § 1903(a) that jurisdictional element of crime is question of fact for jury to decide). Defendants claim they objected to the district court's decision to determine jurisdiction as a matter of law when the district court denied their Rule 29 motions for acquittal.

The government says that Defendants never objected to the district court's failure to instruct the jury on the jurisdictional issue and that, therefore, plain error review applies to Defendants' claim. The government contends that whether the determination of jurisdiction is to be submitted to the jury or decided by the court is currently unsettled in this circuit and that, because the issue is unsettled, the district court committed no plain error.

A review of the record reveals that Defendants did argue, during their Rule 29 motions, that the government had not proved the MS was subject to United States jurisdiction; but Defendants made no objection to the district court's failure to instruct the jury that it must find that the MS was subject to United States jurisdiction. Under these circumstances, we would normally agree with the government that plain error review applies. *See United States v. Starke,* 62 F.3d 1374, 1380–81 (11th Cir.1995) (to preserve objection to jury instructions, party must object before jury retires, stating distinct grounds for objection). *See also United States v. Madruga,* 810 F.2d 1010, 1014 (11th Cir.1987) (district court has no duty to interpret imaginatively what lawyers say). But, because of events occurring after the district court initially instructed the jury, our inquiry into this issue does not end here.

While the jury was deliberating on Defendants' case, the jury sent a note to the district judge. The note, the judge's response to the note, and a possible defense objection to the judge's response to the jury were not made a part of the trial transcript and, thus, are no part of the record on appeal. Sanchez–Martinez moved pursuant to Rule 10(e) of the Federal Rules of Appellate Procedure

to correct or to modify the record. We granted a limited remand pursuant to the authority of *United States v. Taylor,* 607 F.2d 153, 154 (5th Cir.1979), to determine whether the jury's question and the district court's response could be reconstructed.

The district court held a hearing on the motion and found that: (1) the transcribed record (that is, what was, in fact, written down) of the proceedings in Defendants' case is accurate and complete; (2) the jury asked a question which was answered by the court, but the question and answer do not appear in the transcript of the proceedings; (3) the jury's question involved Haiti's decision not to prosecute the case; (4) the court's response informed the jury that the matter of jurisdiction had been resolved by the court and was of no concern to them; (5) the subject matter of the jury question and the court's response related to points argued earlier by one or more defense lawyers; and (6) all the lawyers at trial were aware of the contents of the jury question and the court's response. The district court concluded that, due to the lapse of time, it could not reconstruct the precise wording of the jury question, the court's response, and the defense objection.

Defendants claim the omission of the jury question, the court's response, and the defense objection entitles them to a new trial. They contend that the omission prejudices their ability to show that the district court committed legal error in both its response to the jury's question and its refusal to submit the question of United States jurisdiction to the jury.

■ Not every omission from a transcript entitles a defendant to a new trial. *See United States v. Preciado–Cordobas,* 981 F.2d 1206, 1212 (11th Cir.1993). We have developed a two-part standard for determining whether an incomplete trial transcript entitles a defendant to a new trial. If the defendant is represented by the same attorney at trial and on appeal, a new trial may be granted only if the defendant can show that the failure to record and preserve a specific

portion of the trial visits a hardship on him and prejudices his appeal.[3] *Id.* If the defendant is represented on appeal by an attorney who did not participate in the trial, a new trial is necessary if there is a substantial and significant omission from the trial transcript.[4] *Id.*

■■■ There can be no substantial and significant omissions from a record if, taken as a whole, the record affords effective review on appeal. *See United States v. Cashwell*, 950 F.2d 699, 704 (11th Cir.1992). If the record discloses an accurate account of the trial to allow effective appellate review, we must then address the assignments of error raised on appeal. *Id.*

■■■ While the district court was unable to reconstruct precisely the jury's question, the court's response to the question, and the defense objection to the court's response, the parties and district court agree on the substance: the question involved jurisdiction, the jury was told not to be concerned with the jurisdiction issue, and the defense objection related to whether jurisdiction should be decided by the court or the jury. We conclude, therefore, that the omission is not substantial and significant; we know enough to conduct a meaningful review.

■■■ Having found the record sufficiently recalled, we now turn to Defendants' claim that the district court's response to the jury was incorrect on the law because the issue of jurisdiction should have been submitted for determination by the jury. Because Defendants objected to the district court's response—that jurisdiction was no concern for the jury—to the jury's question, we can no longer review the district court's failure to instruct the jury on the jurisdictional element just for plain error. Instead, we must review the entire jury charge, including the judge's response to the jury question, to determine if the issues of law were presented accurately. *See United States v. Turner*, 871 F.2d 1574, 1578 (11th Cir.1989).

The government argues that whether the jurisdictional element under 46 U.S.C. app. § 1903 is a question of fact for the jury or one of law for the court is debatable. *See United States v. Mena*, 863 F.2d 1522, 1532–33 & n. 8 (11th Cir.1989) (recognizing conflict between prior precedents on whether jurisdiction is question of law or fact); *United States v. Rojas*, 53 F.3d 1212, 1215 n. 2 (11th Cir.1995) (same). In the circumstances before us, we disagree.

In *United States v. Ayarza–Garcia*, 819 F.2d at 1048–49, we held that the jurisdictional element of 21 U.S.C. § 995a(a)[5] is a material element of the crime that is a question of fact to be determined by the jury. In *Ayarza–Garcia*, Defendants challenged the district court's decision to submit the jurisdictional issue to the jury. Defendants argued that the district court should have ruled on the jurisdictional issue as a matter of law in Defendants' pretrial motion to dismiss for lack of subject-matter jurisdiction. We held that when a question—for example, whether a vessel is without nationality—of federal subject-matter jurisdiction is intermeshed with questions on the merits of a case, the jurisdictional issue should be determined at trial (per Rule 29 or by jury), especially where, as here, the jurisdictional require-

---

**3.** This standard applies to Sanchez–Martinez, Ramirez–Fajardo and Castaneda–Marin who are represented on appeal by the same lawyers who also represented them at trial.

**4.** This standard applies to Martinez–Rios and Ortiz–Cotoa who are not currently represented by the lawyers who were appointed to represent them at trial.

**5.** 21 U.S.C. § 955a(a) is the predecessor to 46 U.S.C. app. § 1903(a). Among other things, both laws make it "unlawful for any person ... on board a vessel subject to the jurisdiction of the United States, ... to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance." Also, the phrase "vessel subject to the jurisdiction of the United States" in both laws includes "a vessel without nationality" and "a vessel assimilated to a vessel without nationality."

The particular means of proving jurisdiction at issue in *Ayarza–Garcia* was whether the vessel was "assimilated to a vessel without nationality" under 21 U.S.C. § 955b(d). 21 U.S.C. § 955b(d) is now codified at 46 U.S.C. app. § 1903(c)(1)(B).

ment is also a substantive element of the crime. *Id.*

In *United States v. Mena,* 863 F.2d at 1533, we held that the government presented sufficient evidence for the jury to find that the vessel was subject to the jurisdiction of the United States by virtue of a document showing Honduras's consent to prosecute.[6] We stated that we were then unable to determine if consent is a question of fact for the jury or an issue of law for the court. But, because we concluded that the document was sufficient as a matter of law to meet the consent requirement of 46 U.S.C. § 1903(c)(1)(C) and observed that sufficient evidence of consent was also presented, as a matter of fact, to the jury, we decided that whether the issue is one of law or fact, the vessel had been properly adjudicated to be subject to the jurisdiction of the United States.[7]

■ Any language in *Mena* and *Rojas* suggesting that the jurisdictional requirement of section 1903(a) is a question of law for the court to decide is either dicta or otherwise not binding on us in this case. *See Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller,* 957 F.2d 1575, 1578 (11th Cir.1992) (dicta is not binding precedent). (By the way, in *Mena* and *Rojas* the jurisdictional element was presented to the jury and the convictions affirmed.) The only case of this court to address the issue squarely has held that whether a vessel (not claiming a foreign registry) is subject to the jurisdiction of the United States—for the purposes of maritime drug-law enforcement—is a question of fact reserved for the jury's determination. *See Ayarza–Garcia, supra. Ayarza–Garcia* did not consider the statute before us, but it is close. We think all courts in this circuit must be guided (if not bound) by that decision. So, the district court was mistaken when it removed from the jury's consideration the question of the United States' jurisdiction over the MS.

■ We must now decide whether the district court's error in removing the jurisdictional element from the jury's consideration was prejudicial. That a trial judge cannot direct a verdict in favor of the government for all or even one element of a crime is firmly established. *See United States v. Goetz,* 746 F.2d 705, 708 (11th Cir.1984). A criminal conviction must rest upon a jury determination that the defendant is guilty— beyond a reasonable doubt—of every element of the crime with which he is charged. *See United States v. Gaudin,* —— U.S. ——, ——, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995). A directed verdict in a criminal trial, either in whole or part, cannot be viewed as harmless error. *Goetz,* 746 F.2d at 709. We conclude that there was reversible error in directing the jury that the MS was subject to the jurisdiction of the United States for the purpose of drug-law enforcement. We therefore remand this action for a new trial consis-

---

**6.** Under 46 U.S.C. app. 1903(c)(1)(C), a vessel subject to the jurisdiction of the United States includes a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States.

**7.** The *Mena* court cited *U.S. v. Gonzalez,* 776 F.2d 931 (11th Cir.1985), to support the proposition that consent, and thus jurisdiction, may be a question of law for the court to decide. But, whether jurisdiction is a question of fact to be decided by the jury was not at issue in *Gonzalez.* The *Gonzalez* court was charged with determining whether 21 U.S.C. § 955a(c), now codified at 46 U.S.C. app. § 1903(c)(1)(D), which allows the United States to extend its customs waters to specific foreign vessels through arrangements with foreign nations, violated due process. The *Gonzalez* court held that designating "customs waters" around a specific vessel on the high seas

under section 955a(c) did not violate due process. In determining what kind of "arrangement" with a foreign nation would provide the necessary consent to create customs waters, the court remarked by the way *"[i]t is misleading, therefore, to consider that consent an element of the offense;* rather it is a diplomatic requisite illustrating the international partnership that ensures the rule of law on the high seas." *Id.* at 940. And, *Gonzalez* decided nothing about the issue of jurisdiction over stateless vessels: the question presented here.

In *United States v. Rojas,* 53 F.3d at 1215 n. 2, we, in dicta citing *Mena,* expressed no opinion on whether a "vessel subject to the jurisdiction of the United States" is a question of law for the court or a question of fact reserved for the jury. The *Rojas* court had to decide whether the certification procedure under 46 U.S.C. app. § 1903(c)(1)(C) violated either separation of powers or due process.

tent with this opinion.[8]

VACATED and REMANDED.

---

**8.** To assist the district court on remand, we address Defendants' claims that the district court erred by (1) not allowing defense counsel to cross-examine fully Carmargo–Silvera, (2) refusing to set their sentences at the low end of the guideline range, and (3) refusing to address them personally as required by Federal Rule of Criminal Procedure 32.

Defendants claim the district court erred by limiting the cross-examination of Carmargo–Silvera. Once there is sufficient cross-examination to satisfy the Sixth Amendment's confrontation clause, further questioning is within the district court's discretion. *See United States v. Taylor,* 17 F.3d 333, 340 (11th Cir.1994). The test for the confrontation clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination. *Id.*

Defendants were allowed to show that Carmargo–Silvera was testifying pursuant to a plea agreement and hoped to receive a reduced sentence, that Carmargo–Silvera believed he would receive a reduced sentence in exchange for his testimony, and that Carmargo–Silvera lied to arresting officers by initially claiming he was innocent. The jury was exposed to enough information from which to gauge Carmargo–Silvera's credibility. *Id.* The district court did not abuse its discretion in limiting the cross-examination of Carmargo–Silvera.

Defendants claim the district court erred by sentencing them to six months over the low end of the guideline range. The district court has the discretion to impose any sentence within the guideline range. *See United States v. Big Medicine,* 73 F.3d 994 (10th Cir.1994) (district court's rationale for imposition of particular sentence within appropriate guideline range is unreviewable). The district court did not err in sentencing Defendants within the applicable guideline range.

Defendants claim that they are entitled to resentencing because the district court failed to address them personally in violation of Rule 32 of the Federal Rules of Criminal Procedure. Failing to address a defendant personally or failing to give a defendant the opportunity to make a statement requires resentencing. *See United States v. Phillips,* 936 F.2d 1252, 1256 (11th Cir.1991); *United States v. Taylor,* 11 F.3d 149, 151–52 (11th Cir.1994).