United States Court of Appeals,

Eleventh Circuit.

No. 95-4648.

UNITED STATES of America, Plaintiff-Appellee,

v.

Maria J. DE CASTRO, a.k.a. Fifi, Defendant-Appellant.

Feb. 5, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-320-CR-EBD), Edward B. Davis, Judge.

Before TJOFLAT and BLACK, Circuit Judges, and REAVLEY[*], Senior Circuit Judge.

REAVLEY, Senior Circuit Judge:

Appellant Maria De Castro complains that the district court erred in failing to let the jury decide the element of materiality in her trial for making false statements in violation of 18 U.S.C. § 1010. We conclude that materiality is an element of this crime, but that failing to submit this element to the jury was harmless error. We also conclude that the admission of evidence regarding a government investigation was not plain error. Accordingly we affirm.

BACKGROUND

De Castro was charged with conspiracy to make and making false statements to the Department of Housing and Urban Development (HUD), for the purpose of obtaining federally insured mortgages, in violation of 18 U.S.C. §§ 371 and 1010. She was convicted of conspiracy and five of the six substantive counts.

---

[*]Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

The government's proof showed that De Castro and others submitted applications for mortgages insured by the Federal Housing Administration (FHA), an agency within HUD, on behalf of low income applicants. The applications contained false employment information regarding the applicants. De Castro was a mortgage broker who acted as an authorized underwriter for the loans. De Castro, two real estate brokers, and several putative "employers" participated in the scheme to obtain the government-backed mortgages. The "employers" were business owners paid to submit false employment verifications that were part of the loan documentation. De Castro decided the amount of income used, so as to meet the qualification requirement of the FHA for each applicant. She signed a certification form for each of the mortgages, stating that she had reviewed the case file and found that it met HUD's requirements. The real estate brokers, Virginia and Osvaldo Labrador, as well as several of the loan applicants and false employers, testified for the government. One of the brokers testified that "with [De Castro's] signature, the cases could be approved" by the FHA.

The district court instructed the jury that materiality was an element of the offense. The court further instructed that materiality was a question of law for the court to decide and that the court had already determined that the alleged false statements were material. The defendant objected to the instruction and moved for a mistrial. Because it was then well-established in this

circuit that materiality was a question of law,[1] the district court overruled the objection and denied the motion.

After the Supreme Court's decision in *United States v. Gaudin,* however, we now know that the Constitution requires the jury to determine whether a false statement is material if materiality is an element of the offense.[2] The rule in *Gaudin* applies retroactively to this direct appeal, which was pending when *Gaudin* was decided.[3]

## ANALYSIS

We first determine whether materiality is an element of 18 U.S.C. § 1010, and, if it is, whether it was harmless error for the district court to direct a verdict against defendant on that element.

### 1. Materiality is an Element of 18 U.S.C. § 1010

Whether materiality is an element of 18 U.S.C. § 1010 is an issue of law reviewed de novo.[4] Section 1010 reads, in pertinent

---

[1]*See United States v. Kramer,* 73 F.3d 1067, 1074 (11th Cir.1996) (noting that it was well-established that materiality was a question of law before *Gaudin*).

[2]*United States v. Gaudin,* --- U.S. ----, ----, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995) (materiality under 18 U.S.C. § 1001 is a question for the jury); *Kramer,* 73 F.3d at 1074 (applying *Gaudin* to 18 U.S.C. § 1623).

[3]*Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break' with the past."); *Kramer,* 73 F.3d at 1074 (applying *Gaudin* retroactively).

[4]*See United States v. Hooshmand,* 931 F.2d 725, 737 (11th Cir.1991) (statutory interpretation is a question of law reviewed de novo).

part:

> Whoever, for the purpose of obtaining any loan ... from any person ... with the intent that such loan ... shall be offered to or accepted by the Department of Housing and Urban Development for insurance, ... or for the purpose of influencing in any way the action of such Department, makes, passes, utters, or publishes any statement, knowing the same to be false ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

Although the word "material" does not appear in the statute, we believe that precedent and logic dictate that a materiality requirement be read into it. In *Gevinson v. United States,* we upheld an indictment charging violations of § 1010 because "[m]ateriality, while not alleged *in haec verba,* is alleged in substance and this is sufficient."[5] We stated that the evidence at trial was sufficient to make out a case "of knowingly and wilfully uttering and passing a false *material* statement with the intent to influence FHA in a transaction pending before FHA."[6] Relying on *Gevinson,* we stated in *United States v. Black* that in order to obtain a valid conviction under § 1010, "it was necessary for the government to prove beyond a reasonable doubt that [the defendant] knowingly made a false statement concerning a *material* fact to HUD as charged in the indictment...."[7]

We do not believe that *Gevinson*'s and *Black*'s use of the term "material" was careless or accidental. We have implied a materiality element into analogous false statement statutes. For

---

[5] 358 F.2d 761, 763 (5th Cir.), *cert. denied,* 385 U.S. 823, 87 S.Ct. 51, 17 L.Ed.2d 60 (1966).

[6] *Id.* at 765 (emphasis added).

[7] 644 F.2d 445, 447 (5th Cir.), *modified on other grounds,* 651 F.2d 392 (5th Cir.1981) (emphasis added).

example, in *United States v. Swearingen,* we held that materiality was an element of 18 U.S.C. § 1344(a)(2),[8] and in *United States v. Rapp,* we listed materiality as an element of 18 U.S.C. §§ 1005 and 1014.[9]  Requiring a false statement to be material excludes trivial falsifications from prosecution.  If materiality is not an element, then the statute reaches statements that are incapable of influencing HUD.  We do not believe that Congress intended this result.

In *United States v. Hoag,* the Seventh Circuit held that materiality is not an element of § 1010, reasoning that the word

---

[8]858 F.2d 1555, 1556, 1558 (11th Cir.1988), *cert. denied,* 489 U.S. 1083, 109 S.Ct. 1540, 103 L.Ed.2d 844 (1989).  At the time, 18 U.S.C. § 1344 stated:

> (a) Whoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a federally chartered or insured financial institution;  or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promises shall be fined not more than $10,000 or imprisoned not more than five years, or both.

[9]871 F.2d 957, 963-64 (11th Cir.), *cert. denied,* 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 184 (1989).  18 U.S.C. § 1005 reads in pertinent part:

> Whoever makes any false entry in any book, report, or statement of [any Federal Reserve bank, member bank, national bank or insured bank] with intent to injure or defraud such bank [or various government actors] shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1014 reads in pertinent part:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any [FDIC-insured bank] upon any ... loan shall be fined $5,000 or imprisoned not more than two years, or both.

"material" does not appear in its wording.[10]  *Hoag* was criticized in *United States v. Staniforth,* which noted that *Hoag* created tension with decisions that had implied a materiality element into other false statement statutes.[11]  *Staniforth* refused to extend *Hoag,* adopting instead the "better view" that materiality is an element of 18 U.S.C. § 1014.[12]  We agree that following *Hoag* would create a tension with our circuit's treatment of § 1010 and other false statement statutes.

Aside from repeating *Hoag*'s argument that the word "material" does not appear in § 1010, the government argues that the statute's intent requirement obviates the need for a materiality element. The government asserts that § 1010's intent requirement, which limits prosecution to those who make false statements "for the purpose of influencing" HUD, already meets the objective of excluding trivial false statements from prosecution.  The government also argues that the intent requirement brings materiality in "by the back door," because juries will generally determine a defendant's purpose in making a false statement by considering the statement's ability to influence HUD's actions—that is, by considering whether the statement is material.[13]

These arguments are not without some force, but we are not writing on a blank slate.  The intent requirement of § 1010 does

---

[10]823 F.2d 1123, 1125-26 (7th Cir.1987).

[11]971 F.2d 1355, 1358 (7th Cir.1992).

[12]*Id.*

[13]*See id.* at 1357-58 (noting that materiality often plays a role in determining whether the intent requirement of false statement statutes is met).

not differ in any meaningful way from the intent requirements in §§ 1344, 1005, and 1014, yet *Swearingen* and *Rapp* read materiality into those statutes. Further, while in most cases an individual is unlikely to provide information actually immaterial to the recipient, intending to influence it, this need not always be so. Thus reading materiality into false statement statutes serves a useful function in preventing trivial prosecutions.

While *Gevinson, Black, Swearingen,* and *Rapp* favor including materiality as an element of § 1010, the government points to no precedent indicating otherwise. We hold that materiality is an element of 18 U.S.C. § 1010.

2. Harmless Error

Although the district court erred in failing to allow the jury to decide the element of materiality, the question remains whether the error is reversible. The courts are divided on whether a *Gaudin* error is reversible per se, or is instead susceptible to plain error review or harmless error review.[14] *Gaudin* itself did

---

[14]*See United States v. Jobe,* 90 F.3d 920, 925 (5th Cir.1996) (*Gaudin* error subject to plain error review); *United States v. McGhee,* 87 F.3d 184, 186-87 (6th Cir.) (same), *petition for rehearing en banc granted,* 95 F.3d 1335 (6th Cir.1996); *United States v. David,* 83 F.3d 638, 646-47 (4th Cir.1996) (*Gaudin* error subject to plain error review, but error always "affects substantial rights" under plain error test); *United States v. Raether,* 82 F.3d 192, 194 (8th Cir.1996) (*Gaudin* error subject to harmless error review); *United States v. DiRico,* 78 F.3d 732, 736-38 (1st Cir.1996) (*Gaudin* error is a "structural defect" not subject to harmless error analysis); *United States v. Pettigrew,* 77 F.3d 1500, 1511 (5th Cir.1996) (*Gaudin* error not subject to harmless error analysis); *United States v. Lopez,* 71 F.3d 954, 960 (1st Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 2529, 135 L.Ed.2d 1053 (1996) ("[O]ur best guess is that the Supreme Court would regard [*Gaudin* error as] reversible per se if there were a timely objection—although not automatically "plain error' if no objection occurred....").

not resolve this question.[15]

In *Chapman v. California,*[16] the Court held that a constitutional error does not render a conviction reversible per se; instead such an error can be held harmless if the reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt."[17] Although *Chapman* recognized that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error,"[18] the Court has since recognized that such errors, sometimes referred to as "structural" errors or defects,[19] "are the exception and not the rule," and that there is a "strong presumption" that harmless error analysis is applicable to a trial error of constitutional dimension.[20]

Although constitutional errors are presumptively subject to review for harmless error, other courts have struggled with whether *Sullivan v. Louisiana*[21] forecloses such review. In *Sullivan,* the Court held that harmless error analysis cannot be applied to a

---

[15]*Gaudin,* --- U.S. at ---- - ----, 115 S.Ct. at 2321-22 (Rehnquist, C.J., concurring).

[16]386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

[17]*Id.* at 24, 87 S.Ct. at 828.

[18]*Id.* at 23, 87 S.Ct. at 827-28.

[19]*E.g., Sullivan,* 508 U.S. at 280-83, 113 S.Ct. at 2082-83; *Arizona v. Fulminante,* 499 U.S. 279, 308-11, 111 S.Ct. 1246, 1264-65, 113 L.Ed.2d 302 (1991) (opinion of Rehnquist, C.J., for the Court).

[20]*Rose v. Clark,* 478 U.S. 570, 577-79, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986).

[21]508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

defective reasonable doubt instruction.  The Court reasoned that where there is a defective reasonable doubt instruction, there is no jury verdict within the meaning of the Sixth Amendment upon which a harmless error scrutiny can operate.[22]  In an alternative analysis, the Court held that the error was a "structural error," that is, a serious and basic error that infected the entire trial, "with consequences that are necessarily unquantifiable and indeterminate," and hence one where harmless error analysis in inapplicable.[23]

In three recent cases, our court has addressed whether the failure to allow the jury to decide the materiality element is reversible.  In *United States v. Kramer,*[24] the defendant urged that the error was reversible per se.  We rejected this argument, and concluded that even though the error was plain, the defendant did not meet requirement of showing that his substantial rights were affected, i.e. that the outcome of the trial was affected by the error.[25]  Again in *United States v. Toussaint*[26] and *United States v. Calhoon,*[27] we held that the district court's failure to let the jury decide materiality was not prejudicial under the plain error standard and hence was not reversible.

Our case is distinguishable from *Kramer, Toussaint* and

---

[22]*Id.* at 280-81, 113 S.Ct. at 2082.

[23]*Id.* at 280-83, 113 S.Ct. at 2082-83.

[24]73 F.3d 1067 (11th Cir.1996).

[25]*Id.* at 1074-75.

[26]84 F.3d 1406, 1407 (11th Cir.1996).

[27]97 F.3d 518, 529-30 (11th Cir.1996).

*Calhoon* in one regard. In our case defense counsel did object to the failure of the district court to allow the jury to decide the element of materiality. In *Kramer, Toussaint* and *Calhoon,* there was no objection and the court therefore turned to the plain error standard of review. Plain error review applies to alleged errors under Fed.R.Crim.P. 52(b) to which there was no objection at the trial. The rule provides that "[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In *United States v. Olano,*[28] the Court defined the standards for plain error review. The Court held that the defendant seeking a reversal for plain error must establish (1) an error, (2) which was plain, and (3) which affected "substantial rights."[29] Even if these requirements are met, the reviewing court is left with discretion to correct the error, and should not correct the error unless it seriously affects the fairness, integrity or public reputation of judicial proceedings.[30]

Significant to our case, the Court in *Olano* held that in deciding whether the error affected "substantial rights" under Rule 52(b), the review is similar to harmless error review when there is a timely objection under Fed.R.Crim.P. 52(a). Rule 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The Court explained that prejudice is the focus under either subpart of Rule 52 when deciding whether the defendant's substantial rights were

---

[28]507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

[29]*Id.* at 730-32, 113 S.Ct. at 1776.

[30]*Id.*

affected:

> The third and final limitation on appellate authority under Rule 52(b) is that the plain error "affec[t] substantial rights." This is the same language employed in Rule 52(a), and in most cases it means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings. When the defendant has made a timely objection to an error and Rule 52(a) applies, the Court of Appeals normally engages in a specific analysis of the District Court record—a so-called "harmless error" inquiry—to determine whether the error was prejudicial. Rule 52(b) normally requires the same kind of inquiry, with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, the Court of Appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.[31]

We read the Court to say that the ultimate question of harm or prejudice is the same whether or not objection is made at the time of trial, but the burden of persuading the appellate court of the harm or prejudice is borne by the government where objection was made at trial. The Court did leave open the possibility that some errors, such as the structural defects described in *Fulminante*,[32] might also be deemed to affect substantial rights regardless of their effect on the outcome of the trial.[33]

We conclude that even though there was an objection in our case pointing out the *Gaudin* error, the error is not reversible per se, but is subject to harmless error review. The mere fact that an objection was raised does not render harmless error review inapplicable. The Supreme Court has employed harmless error review

---

[31] *Id.* at 734-35, 113 S.Ct. at 1778 (citations omitted).

[32] *Arizona v. Fulminante,* 499 U.S. 279, 308-11, 111 S.Ct. 1246, 1264-65 (opinion of Rehnquist, C.J., for the Court).

[33] *Olano,* 507 U.S. at 734-35, 113 S.Ct. at 1778.

where objections were lodged with the district court.[34] Moreover, the law of our circuit compels the conclusion that a *Gaudin* error is not reversible per se even where the defendant does object. *Olano* teaches that the prejudice requirements under the plain error and harmless error standards are the same, except for the burden of persuasion. If our court in *Kramer, Toussaint* and *Calhoon* had concluded that the *Gaudin* errors in those cases were not susceptible to prejudice scrutiny, either because the error was structural or because there was no constitutional verdict on which to conduct a review for prejudice, it would not have conducted a prejudice analysis. In short, we believe that our court has already held that *Sullivan* does not extend to *Gaudin* errors.

In *United States v. Medina,*[35] the court held that a district court's failure to submit a jurisdictional element of a drug offense to the jury, and directed verdict on that element, was not reviewable for harmless error and hence was reversible per se.[36] However, since the three other cases discussed above (two of which preceded *Medina*) hold that the specific error at issue here—failing to submit the element of materiality to the jury—is not reversible per se but is instead subject to review for prejudice, we follow these precedents rather than *Medina.*

Applying harmless error analysis to this case, we conclude that the *Gaudin* error was harmless beyond a reasonable doubt. We

---

[34]*E.g. Fulminante,* 499 U.S. at 283, 294-96, 111 S.Ct. at 1250, 1257; *United States v. Hasting,* 461 U.S. 499, 502-03, 510-11, 103 S.Ct. 1974, 1977, 1981, 76 L.Ed.2d 96 (1983).

[35]90 F.3d 459 (11th Cir.1996).

[36]*Id.* at 464.

have defined the test for materiality as "whether a statement has a natural tendency to influence, or is capable of influencing, the exercise of a governmental function."[37] The government conclusively proved that De Castro's submission of fraudulent documents, containing false employment information about mortgage applicants, not only had the capacity to influence the government, but in fact influenced the FHA to guarantee the loans in issue. More specifically, the proof established that the FHA would not have insured the mortgages but for De Castro's submission of the false loan documents, certification that they were accurate, recruitment of the false employers, and calculation of the income amounts listed on the employer verification forms.

We are further persuaded that the error was harmless because of the finding the jury did make. While not instructed to determine materiality, the jury was instructed to decide, and found beyond a reasonable doubt, that De Castro submitted the false documents "for the purpose of obtaining a mortgage insured by the Department of Housing and Urban Development." As explained above, the intent element is not the same as the materiality element. The former concerns the defendant's state of mind, while the latter concerns the effect on the government agent. However, proof of the two elements are closely related. The materiality of the statements is evidence of intent to influence government action, in this case the approval of the mortgages. Conversely, proof that the defendant intended to influence the government is evidence that

---

[37]*United States v. Grizzle,* 933 F.2d 943, 948 (11th Cir.), *cert. denied,* 502 U.S. 897, 112 S.Ct. 271, 116 L.Ed.2d 223 (1991).

the statements she made were material. While there may be instances where a defendant intends to influence government action by making *immaterial* statements, such circumstances are not present here.

3. Admission of HUD Findings

De Castro separately argues that the district court erred in permitting the government to introduce a HUD "finding" of fraud. Scott Kottman, a loan specialist and investigator for HUD, was the government's first witness. He testified that he began an investigation after a large number of mortgage defaults in the Phoenix area. He noticed that the majority of the bad loans involved the same broker, Virginia Labrador, and that the same employers kept appearing in the files. He then discovered that home buyers were not employed where the files indicated, and linked the paperwork in the files to De Castro. Kottman testified that he investigated De Castro's company, Phoenix Mortgage, because of "[t]he unusually large number of false claims." He went on to testify that after the investigation De Castro was suspended from doing business with the FHA. The suspension letter was admitted into evidence without objection.

Citing *United States v. Christo*[38] and other authority, De Castro complains that it is error to allow the introduction of the results of an agency's "findings" in a criminal trial. She further argues that the error was compounded by the prosecutor's statements in his opening and closing arguments, such as the statement in opening argument that HUD "found evidence of fraud," and the

---

[38] 614 F.2d 486 (5th Cir.1980).

statement in closing argument that HUD "concluded there was fraud on the part of Phoenix."

De Castro concedes that there was not a proper objection to the evidence or the argument of the prosecutor, and accordingly the plain error of review applies.

In *Christo,* the defendant was convicted of misapplication of bank funds. The government's theory was that bank overdrafts in violation of a civil banking statute constituted criminal misapplication. The jury was further instructed that the civil violation could be considered in deciding criminal liability. The court found plain error based on "the inclusion of [civil] violations in the case," and "indeed the whole tenor of the trial."[39] In these regards *Christo* bears little similarity to our case. In our case the government never contended, nor was the jury instructed, that a violation of a civil statute was sufficient to establish, or even relevant to, guilt under a criminal statute made the basis of the indictment.

The error here, if any, does not rise to the level of plain error. Kottman did not testify that there was an agency finding of "fraud." The government offered extensive evidence from the participants in the scheme that De Castro submitted fraudulent documents to HUD. The prosecutor never argued that a HUD finding of fraud was sufficient to convict De Castro, and instead reminded the jurors in closing argument of the testimony of ten witnesses besides Kottman. Under the plain error standard, De Castro does not carry her burden of showing that the claimed error was

---

[39]*Id.* at 492.

prejudicial, meaning "that the error affected the outcome of the District Court proceedings."[40] Even if De Castro had met this prong of the plain error test, we should not exercise our discretion to correct a plain error unless the error seriously affected "the fairness, integrity or public reputation of judicial proceedings."[41] The error, if any, in allowing the evidence of the HUD investigation does not satisfy this last element of the plain error test.

AFFIRMED.

---

[40]*Olano,* 507 U.S. at 734-35, 113 S.Ct. at 1778.

[41]*Id.* at 732, 113 S.Ct. at 1776.